1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RON CARTER, et al.,

    Plaintiffs,

  v.

XPO LAST MILE, INC,

    Defendant.

Case No. 16-cv-01231-WHO

**ORDER GRANTING CONDITIONAL CERTIFICATION**

Re: Dkt. No. 49

   Plaintiffs seek conditional certification under the Fair Labor Standards Act (FLSA) of a class of Delivery Drivers who signed Delivery Service Agreements with defendant XPO Last Mile, Inc. (XPO). XPO argues that the Delivery Drivers are not similarly situated for several reasons, but given the low burden for FLSA conditional certification in this District and the fact that discovery is needed to test the strength of XPO's assertions (which may be re-raised on a motion to decertify), plaintiffs' motion for conditional certification is GRANTED.

<strong>BACKGROUND</strong>

   XPO provides delivery services to retail merchants like Home Depot, Lowe's Home Improvement, Macy's, Ethan Allen, Pottery Barn, and Kraftmaid. FAC ¶ 5. These companies contract with XPO to provide delivery and basic installation of newly purchased appliances and other merchandise, and removal of old appliances from their customers' homes. *Id*. XPO utilizes plaintiffs and similarly situated class members ("Delivery Drivers") to pick up the merchandise at the merchants' stores or warehouses and to deliver and install them at the customers' homes. It also utilizes the Delivery Drivers to haul away old appliances from the customers' homes for disposal. *Id*.

   Plaintiffs claim that XPO misclassifies the Delivery Drivers as independent contractors

United States District Court
Northern District of California

1   pursuant to the Delivery Service Agreements (DSAs) that XPO requires the Delivery Drivers to

2   sign.  Plaintiffs argue the Delivery Drivers should be classified as employees, and as a result assert

3   claims on behalf of Delivery Drivers for: (1) failure to pay overtime under the Federal Labor

4   Standards Act (FLSA, 29 U.S.C §§ 201 *et seq.*); (2) failure to pay a minimum wage under FLSA;

5   (3) failure to pay a minimum wage under California law (Cal. Labor Code §§ 1182.11, 1194; IWC

6   Wage Order 9); (4) failure to pay overtime under California law (Cal. Labor Code §§ 510, 1194;

7   IWC Wage Order 9); (5) reimbursement of employee expenses under California law (Cal. Labor

8   Code § 2802); (6) unlawful deduction from wages under California law (Cal. Labor Code §§ 221,

9   223; Wage Order 9); (7) failure to provide meal periods under California law (Cal. Labor Code §§

10  226.7, 512; Wage Order 9); (8) failure to permit rest breaks under California law (Cal. Labor Code

11  § 226.7; Wage Order 9); (9) failure to provide accurate wage statements under California law (Cal.

12  Labor Code §§ 226, 226.3; Wage Order 9); (10) waiting time penalties under California law (Cal.

13  Labor Code §§ 201-203); (11) violations of California's Unfair Competition Law (Cal. Bus. &

14  Prof. Code §§ 17200 *et seq.*); and (12) civil penalties under the California Private Attorneys

15  General Act (Cal. Labor Code §§ 2698, *et seq.*).

16      Through this motion, plaintiffs ask me to conditionally certify a class of Delivery Drivers

17  under FLSA, so that they can inform similarly situated Delivery Drivers of this action and allow

18  those drivers to opt-in to being represented by plaintiffs' counsel in this action.  The class

19  plaintiffs seek to conditionally certify is:

20          All persons who are or have operated as a Delivery Driver for
            Defendant in the State of California and who executed an XPO or
21          3PD "Delivery Service Agreement" or a similar written contract on
            behalf of themselves or entities in which they have an ownership
22          interest that was in effect during the period commencing March 11,
            2013 through the present.
23
    Memo. at 1.  "Delivery Drivers" are defined in the FAC as individuals who pick up, deliver, and
24
    install merchandise at the retailer's stores or warehouses.  FAC ¶¶ 5, 45.
25
26      XPO opposes, arguing that conditional certification is not appropriate here given the

27  individual circumstances of the Delivery Drivers and lack of common proof for misclassification.

28

**LEGAL STANDARD**

Under 29 U.S.C. § 216(b), an employee may bring a collective action on behalf of other "similarly situated" employees.[1] The majority of courts have adopted a two-step approach for determining whether a class is "similarly situated." *Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010); *see also Daniels v. Aéropostale West, Inc.*, C-12-05755 WHA, 2013 U.S. Dist. LEXIS 59514, * 5 (N.D. Cal. Apr. 24, 2013). At step one, the court must determine whether the proposed class should be informed of the action. *Harris*, 716 F. Supp. 2d at 837. The "notice" stage determination of whether the putative class members will be similarly situated is made under a "fairly lenient standard" which typically results in conditional class certification. *Daniels*, 2013 U.S. Dist. LEXIS 59514,* 6. The plaintiff must make substantial allegations that the putative class members were subject to an illegal policy, plan, or decision, by showing that there is some factual basis beyond the "mere averments" in the complaint for the class allegations. *Id.*[2]

Given the lenient standard at the notice stage, courts have held that plaintiffs bear a "very light burden" in substantiating the allegations. *Prentice v. Fund for Pub. Interest Research, Inc.*, C-06-7776 SC, 2007 U.S. Dist. LEXIS 71122, *5 (N.D. Cal. Sept. 18, 2007) ("Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage."). Courts have also rejected attempts by defendants to introduce evidence going to the merits of plaintiffs' allegations at the notice stage. *See, e.g.*, *Labrie v. UPS Supply Chain Solutions, Inc.*, C-08-3182 PJH, 2009 U.S. Dist. LEXIS 25210, * 20 (N.D. Cal. Mar. 18, 2009) (rejecting defendant's evidence in evaluating conditional certification as "beyond the

---

[1] This analysis is distinct from the Rule 23 class certification analysis. *See, e.g., Hill v. R+L Carriers, Inc.*, C-09-1907 CW, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) ("collective actions under the FLSA are not subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure for certification of a class action.").

[2] At step two, which occurs after discovery is completed, defendant may move to decertify the class and the court makes a factual determination whether the plaintiffs are similarly situated by weighing factors including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appeared to be individual to each plaintiff; and (3) fairness and procedural considerations. *Harris*, 716 F. Supp. 2d at 837.

United States District Court
Northern District of California

1  scope of this court's analysis in a first tier determination insofar as the evidence raises questions

2  going to the merits of whether plaintiffs are sufficiently similarly situated to allow this action to

3  proceed as a FLSA collective action, and is more appropriately considered as part of the court's

4  analysis in a second tier determination on a motion to decertify after conditional certification is

5  granted, notice has been given, the deadline to opt-in has passed, and discovery has closed."); *see*

6  *also Harris*, 716 F. Supp. 2d at 838 ("A plaintiff need not submit a large number of declarations or

7  affidavits to make the requisite factual showing.  A handful of declarations may suffice . . . . The

8  fact that a defendant submits competing declarations will not as a general rule preclude conditional

9  certification.").

10  **DISCUSSION**

11  **I.  CONDITIONAL CERTIFICATION**

12  The only question is whether plaintiffs have met their "light burden" by setting forth

13  substantial allegations showing that the Delivery Drivers are "similarly situated."  To do so,

14  plaintiffs submit declarations from five named plaintiffs testifying that:

15  - XPO uniformly classified Delivery Drivers as independent contractors;

16  - XPO requires Delivery Drivers to sign DSA that have the same material terms (although

17    some DSAs differ in non-material respects);

18  - DSAs are presented to drivers as a "complete document" and Delivery Drivers have no

19    ability to negotiate rates of pay or other terms;

20  - All Delivery Drivers perform the same basic job duties (pick up merchandise from

21    warehouse or stores and deliver it to the retailers' customers' homes);

22  - Delivery Drivers are assigned by XPO to one or more retailer stores and provided with the

23    delivery manifest lists and time slots;

24  - Delivery Drivers do not have any "say" in their assigned deliveries and cannot refuse

25    deliveries;

26  - Delivery Drivers must notify XPO upon completion of delivery through a scanner or

27    smartphone app provided by XPO;

28  - Delivery Drivers must wear XPO shirts, dark pants, black shoes, and a company issued

badge;

- Delivery Drivers must use trucks that meet certain requirements for age, appearance, and have an XPO logo when making deliveries;

- XPO collects customer satisfaction data on their Delivery Drivers and "at times" Delivery Drivers are required to attend meetings to discuss the customer satisfaction data;

- Delivery Drivers must provide their own vehicle and pay for the vehicle's maintenance, repair, and insurance;

- "Most" Delivery Drivers are required to engage helpers at the Delivery Drivers' own cost and required to post a $5000 bond to cover lost or damaged merchandise or damage to a customer's home;

- Delivery Drivers routinely work more than 40 hours a week for XPO, do not perform deliveries for other companies, and are typically scheduled by XPO for five, often six and not infrequently seven days a week; and

- Under the DSAs, Delivery Drivers are paid a flat fee per delivery, per day, or per week worked.

*See generally* Dkt. Nos. 50-1, 50-3, 50-4, 50-5, 50-6 (Driver Declarations).

Not surprisingly, XPO challenges this testimony and counters with declarations from XPO employees and Delivery Drivers who testify that:

- The named plaintiff Delivery Drivers themselves operated "businesses" and signed the DSAs in their businesses' names;

- Delivery Driver businesses can be single-vehicle sole proprietorships or corporations (who themselves operate a fleet of vehicles with their own employees or sub-contractors);

- XPO has no input on who the Delivery Drivers employ as their employees or sub-contractors;

- XPO has no input on the types or number of vehicles used (purchased or leased) by the Delivery Driver businesses;

- Delivery Drivers may work for other companies, including XPO competitors;

- Delivery Drivers are free to reject deliveries offered by XPO without negative

1    consequences;

2    •   Some of the Delivery Drivers have been in business for less than 2 years or more than 15;

3    •   Delivery Drivers negotiate different terms under the DSAs, including the rates that their

4        companies charge XPO depending on the types of deliveries being made and the location

5        of deliveries;

6    •   Delivery Drivers may control the routes and scheduling of the XPO deliveries;

7    •   Delivery Driver vehicles do not have XPO logos;

8    •   The Delivery Driver business employees and contractors do not wear XPO uniforms; and

9    •   Delivery Drivers in the class pleaded by plaintiffs have signed at least five different

10       versions of the DSAs.

11   *See generally* Dkt. Nos. 57-2 (Delivery Driver Business Declarations); 57-1 (Torres XPO Decl.);

12   Dkt. No. 57-5 (Rollins XPO Decl. & Exs thereto [DSAs]).

13       As noted above, in this District the question on a conditional certification motion is simply

14   whether plaintiffs have made "substantial allegations" that the putative class members were

15   subject to an illegal policy, plan, or decision, by showing that there is some factual basis beyond

16   the "mere averments" in the complaint for the class allegations.  *Daniels*, 2013 U.S. Dist. LEXIS

17   59514,* 6.  They have done so here.  Although XPO may dispute some of plaintiffs' allegations –

18   for example, whether the typical Delivery Driver could or did negotiate the rates of services under

19   the DSAs, whether the typical Delivery Driver worked exclusively or primarily for XPO, whether

20   the typical Delivery Driver was required to wear a uniform or carry an XPO logo on their vehicle

21   – those disputes will be considered at the "second step" of the FLSA certification process.  *See,*

22   *e.g.*, *Harris*, 716 F. Supp. 2d at 837; *see also Kellgren v. Petco Animal Supplies, Inc*., No.

23   13CV644 L KSC, 2015 WL 5167144, at *6 (S.D. Cal. Sept. 3, 2015)  (refusing to "give

24   Defendant's happy camper declarations any weight" at the first conditional certification stage).[3]

25   _____

26   [3] XPO relies on a Southern District case which imposed on plaintiffs the burden to support their
     "detailed allegations" by "affidavits which successfully engage a defendant's affidavits to the
27   contrary."  *Trinh v. JP Morgan Chase & Co*., No. 07-CV-1666 W (WMC), 2008 WL 1860161, at
     *3 (S.D. Cal. Apr. 22, 2008) (relying on *Hipp v. Nat'l Liberty Life Ins. Co*., 252 F.3d 1208, 1219
28   (11th Cir.2001)).  Even if that sort of evidentiary showing was required, it has been provided here.
     Plaintiffs' detailed declarations "engage" defendants' declarations.  To the extent there are factual

United States District Court
Northern District of California

1    XPO focuses on the fact that the determination of whether a Delivery Driver was properly

2    classified as an independent contractor is, by its nature, a fact-intensive analysis.  Oppo. 11-12.[4]

3    That, in and of itself, does not mean conditional certification is inappropriate.  Supported by

4    declarations, plaintiffs assert that XPO treated the Delivery Drivers similarly in ways that would

5    support their misclassification argument.  If that is true, then common proof will be used to answer

6    the fact-intensive inquiry.

7        If some Delivery Drivers are shown, upon development of the evidence, to be differently

8    situated from the others in material respects – *i.e.*, in respects that would impact the analysis of

9    whether they were properly classified as independent contractors under FLSA – then the class

10   definition can be refined to exclude Delivery Drivers who are not similarly situated or, at the

11   second step, decertification of the FLSA class may be appropriate.

12       XPO relies on a number of decisions from districts outside California that have rejected

13   conditional certification in independent contractor misclassification cases.  Those cases are

14   inapposite or not persuasive.  For example, in *Pfaahler v. Consultants for Architects, Inc.*, No. 99

15   C 6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000), conditional certification was

16   inappropriate because there was no evidence that "those in the pool of potential claimants perform

17   the same duties as the plaintiff."  That is not the case here.  *See also Bamgbose v. Delta-T Grp.,*

18   *Inc.*, 684 F. Supp. 2d 660, 670 (E.D. Pa. 2010) (denying conditional certification for healthcare

19   workers assigned by defendant temporary staffing agency to work at various client sites because

20   nature of client sites and amount of control by client sites varied widely, creating further issues to

22   disputes between them, those are not appropriately resolved at this juncture.

[4] Under FLSA, that determination depends on a multi-factor test considering whether "as a matter
of economic reality," the individuals are dependent upon the business to which they render service
and: (1) the degree of the alleged employer's right to control the manner in which the work is to be
performed; (2) the alleged employee's opportunity for profit or loss depending upon his
managerial skill; (3) the alleged employee's investment in equipment or materials required for his
task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5)
the degree of permanence of the working relationship; (6) whether the service rendered is an
integral part of the alleged employer's business; (7) ownership of property or facilities when work
occurred; and (8) whether responsibility under the contracts between a labor contractor and an
employer passes from one labor contractor to another without material changes.  *See, e.g., Torres-*
*Lopez v. May*, 111 F.3d 633, 646 (9th Cir. 1997); *see also Saravia v. Dynamex, Inc*., No. C 14-
05003 WHA, 2016 WL 4140509, at *3 (N.D. Cal. Aug. 4, 2016).

United States District Court
Northern District of California

7

1  plaintiffs' "joint employer" theory).

2       I am also not persuaded by the analyses of courts that reject conditional FLSA certification

3  in independent contractor misclassification cases solely because the independent contractor

4  analysis is fact intensive and because there are alleged differences between class members (*e.g,*.

5  hours worked, investments made).  If that were the test, no independent contractor

6  misclassification case could be certified under FLSA.  *See Demauro v. Limo, Inc.*, No. 8:10-CV-

7  413-T-33AEP, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) ("the individualized analysis needed

8  to determine whether each driver is an independent contractor or employee for FLSA purposes

9  precludes class certification."); *In re FedEx Ground Package Sys., Inc., Employment Practices*

10  *Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009) (denying conditional certification because

11  "the court must take into consideration the actual history of the parties' relationship, necessitating

12  an individualized examination of the multiple factors relating to each drivers' employment.").

13  Whether there are *materially* significant differences is best tested at the "second step" of the FLSA

14  certification process. [5] *See, e.g., Gilbert v. Citigroup, Inc.*, C-08-0385 SC, 2009 U.S. Dist. LEXIS

15  18981, * 10 (N.D. Cal. Feb. 18, 2009) ("Defendants' concern about individualized inquiries does

16  not require the Court to deny conditional certification. . . .  Under the two-stage certification

17  procedure, Defendants can present this evidence and make these arguments as part of a motion to

18  decertify the class once discovery is complete.").

19       XPO's argument that there are differences in the DSAs entered into by the Delivery

20  Drivers that demonstrate that conditional certification is inappropriate merits some further

21  discussion.  XPO points to: (i) the 2009 amendment of the DSA to include haul away duties; (ii)

22  2010 revisions to reconciliation and indemnification provisions, as well as the addition of a class

23  action waiver in the arbitration provision; (iii) 2013 changes to the arbitration and indemnification

24  clauses, and requirements that the Delivery Drivers take specific steps to "maintain" their

[5] As noted, courts in this district usually do not usually consider defendants' evidence in determining conditional certification.  *See, e.g., Wellens v. Daiichi Sankyo, Inc.*, No. 13-CV-00581-WHO, 2014 WL 2126877, at *2 (N.D. Cal. May 22, 2014); *but see Andel v. Patterson-UTI Drilling Co.*, LLC, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (denying conditional certification based on in depth review of evidence showing, in part, that plaintiffs' relative investments and ability to control profit and loss varied significantly).

United States District Court
Northern District of California

1  independence; and (iv) a 2015 change to the indemnification clause.   As an initial matter, XPO is

2  simply incorrect that because I will be required to review each form of DSA at issue, certification

3  is inappropriate.  Reviewing the legal impact of five different DSAs is not the sort of highly

4  individualized assessment that precludes certification, but at most might lead to sub-classes or a

5  refined class definition.

6       XPO more narrowly focuses on the different arbitration provisions in the DSA to argue

7  that because potential class members might have different defenses to the different arbitration

8  clauses, conditional certification is not appropriate.  Opp. 17-19.  I note that XPO has not moved

9  to compel arbitration.  If and when it does so, that there may be different defenses to the different

10  arbitration provisions does not undermine that plaintiffs have made a showing that the class

11  members they seek to represent and provide notice to are similarly situated with respect to *their*

12  *claims*.  *See, e.g., Carrillo v. Schneider Logistics, Inc*., 2012 U.S. Dist. LEXIS 26927 at * 45 (C.D.

13  Cal. Jan. 31, 2012) (question is whether class members are "similarly situated with respect to the

14  disputed claims.").

15       I conclude that plaintiffs have met their burden to show substantial similarity between the

16  claims they intend to assert on behalf of Delivery Drivers sufficient for conditional certification

17  under FLSA.[6]  To facilitate prompt notice, defendants shall provide the class information within

18  30 days of the date of the oral argument.

19  **II.       FORM OF NOTICE**

20       XPO objects to the proposed form of notice suggested by plaintiffs.  At oral argument, I

21  directed the parties to review the FLSA notice I approved in *Wellens et al v. Daiichi Sankyo, I*nc.,

22  13-cv-00581-WHO, which addressed many of the objections defendants raise.  The parties shall

23  submit an agreed-to notice on or before **October 17, 2016**.  If the parties cannot stipulate to the

24

25  [6] In support of their motion, plaintiffs rely on three decisions certifying classes of drivers (in cases

26  brought against XPO's predecessor 3PD, Inc.) under Rule 23 in other jurisdictions.  *See Brandon v. 3PD, Inc*., No. 13 C 3745, 2014 WL 11348985, at *1 (N.D. Ill. Oct. 20, 2014); *Martins v. 3PD, Inc*., No. CIV.A. 11-11313-DPW, 2013 WL 1320454 (D. Mass. Mar. 28, 2013); *Phelps v. 3PD,*

27  *Inc*., 261 F.R.D. 548 (D. Or. 2009).  XPO objects that those cases involved different facts and

28  different states' law.  Oppo. 21.  I do not consider the certifications in those cases as determinative or even relevant to my granting conditional certification under FLSA.

1    form of notice, they may submit a joint letter of no more than five pages, and attach the redlined

2    versions of their proposals.

3                                        **CONCLUSION**

4            Plaintiffs' motion for conditional certification is GRANTED.

5            **IT IS SO ORDERED**.

6    Dated: October 3, 2016

7    

8                                        WILLIAM H. ORRICK
                                         United States District Judge

United States District Court
Northern District of California