

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
50 California Street
9th Floor
San Francisco, California 94111
Tel 415 394-9400
Fax 415 394-9401
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RALEIGH, NC |
| ALBUQUERQUE, NM | HARTFORD, CT | MORRISTOWN, NJ | RAPID CITY, SD |
| ATLANTA, GA | HONOLULU, HI* | NEW ORLEANS, LA | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SALT LAKE CITY, UT |
| BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAN DIEGO, CA |
| BOSTON, MA | KANSAS CITY REGION | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| CHICAGO, IL | LAS VEGAS, NV | ORLANDO, FL | SAN JUAN, PR |
| CINCINNATI, OH | LONG ISLAND, NY | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | LOS ANGELES, CA | PHOENIX, AZ | ST. LOUIS, MO |
| DALLAS, TX | MADISON, WI | PITTSBURGH, PA | TAMPA, FL |
| DAYTON, OH | MEMPHIS, TN | PORTLAND, OR | WASHINGTON, DC REGION |
| DENVER, CO | MIAMI, FL | PORTSMOUTH, NH | WHITE PLAINS, NY |
| DETROIT, MI | MILWAUKEE, WI | PROVIDENCE, RI | |
| GRAND RAPIDS, MI | MINNEAPOLIS, MN | | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

April 2, 2018

Hon. William H. Orrick
San Francisco Courthouse
450 Golden Gate Ave
San Francisco, CA 94102

Re:   *Carter, et al. v. XPO Last Mile, Inc.*, Case No. 3:16-cv-01231;
      *Garcia, et al. v. Macy's West Stores, Inc., et al.*, Case No. 3:16-cv-04440
      *Ibanez v. XPO Last Mile, Inc.*, Case No. 3:17-cv-40090

Dear Judge Orrick:

Pursuant to paragraph 4 of the Court's Standing Order for Civil Cases, XPO Last Mile, Inc. ("XPO LM") submits this letter seeking a protective order, pursuant to Fed. R. of Civ. Proc. 26, relieving XPO LM of its obligation to comply with the *Carter* plaintiffs' overly broad 30(b)(6) Deposition Notice, and staying compliance with the *Ibanez* and *Garcia* plaintiffs 30(b)(6) deposition notices until the Court resolves the issues with the *Carter* plaintiffs' Deposition Notice, while Plaintiffs seek an order compelling XPO LM to proceed with the 30(b)(6) depositions based on the schedule the parties previously agreed upon.

**I.   XPO LM's Position.**

XPO LM's concern is adequately preparing a witness to respond to a 30(b)(6) notice. This letter is filed now because the *Carter* plaintiffs' threatened to compel a deposition that cannot go forward on April 5, 2017, both because the scope of the examination remains unresolved and XPO LM's lead counsel is unavailable on that date. The history of this dispute is lengthy, but contrary to plaintiffs' suggestion it is not one of delay—XPO LM will respond to an appropriate 30(b)(6) notice, just not before the scope of the *Carter* notice is resolved. Contrary to plaintiffs' arguments, XPO LM never agreed its 30(b)(6) deposition should proceed on April 5, absent an agreement on the scope of the deposition. Having a deposition on that date was always predicated on an agreement as to scope. Plaintiffs twist that agreement and use the threat of sanctions—a threat repeatedly made over the last 18 months when there were discovery disputes—to try and force a deposition or schedule it in San Francisco (even though the witness is in Syracuse, New York). Respectfully, with the 60-day extension, and the parties' consensus that certification depositions should be complete by May 16, there is no reason we cannot resolve the scope first and then schedule a deposition. A brief history of this dispute follows.

**jackson|lewis**

Hon. William H. Orrick
April 2, 2018
Page 2

Rather than issue an omnibus 30(b)(6) notice to XPO LM in the three related cases, the plaintiffs insisted on issuing three separate 30(b)(6) notices to XPO LM. The result was 24 pages of topics covering 75 matters for examination, 23 corresponding requests for production, and three sets of objections and designations.[1] These three notices overlap in numerous ways and, as this Court has recognized, XPO LM's testimony should be coordinated so it is deposed only once in the related cases. In an effort to coordinate the depositions XPO LM undertook to negotiate separately with each plaintiff group (at their insistence) to refine the universe of topics.

The *Carter* topics are the most voluminous and encompassing. In spite of numerous meet and confers, exchanges of objections and designations, the parties are unable to negotiate a reasonable scope of examination that satisfies the *Carter* plaintiffs. They admit, they intend to hold XPO LM to the topics as drafted and have refused to revise them.[2] The topics in dispute include: 1-8, 10-21, 23, 24, 33, 34. The parties appear to have reached an agreement about topics 9, 22, 25-32, subject to plaintiffs accepting XPO LM's designations on those topics.

The *Ibanez* and *Garcia* plaintiffs issued more tailored notices and the parties largely agree to the scope of those notices. XPO LM issued objections and designations in those cases too; the reason it wishes to stay compliance is to develop a single universe of topics, identify overlap among the topics, make one set of designees available for deposition, and thereby avoid being deposed numerous times on overlapping issues. Hence, the only issue for resolution is the scope and propriety of the *Carter* Notice. Once resolved, the 30b deposition(s) should proceed (this has always been XPO LM's position).

Pursuant to FRCP 26(c)(1), this Court may issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure." Courts usually limit the scope of 30(b)(6) depositions because the matters for examination are overbroad or disproportionate to the needs of the case;[3] overly burdensome;[4] irrelevant;[5] unreasonably cumulative or duplicative of other discovery;[6] the information sought is more easily obtained using a different discovery mechanism[7]. For good cause shown, relief from such infirmities is usually a limitation on the matter for examination or excusing the deponent from the deposition altogether. *See, ChriMar Sys. Inc. v. Cisco Sys., Inc.*, 312 F.R.D. 560 (N.D. Cal. Jan. 12, 2016) (limiting some topics, quashing others, and ordering alternative discovery). The matters for examination in the *Carter* Notice suffer from all of these infirmities and should be limited. Examples include:

---

[1] XPO LM's objections and designations to the three notices are attached as Exhibits A-C. Carter Plaintiffs' First Amd. 30(b)(6) Notice was filed at Carter ECF No. 158 at 22-28, Ibanez and Garcia Plaintiffs' Notices were also filed at Carter ECF No. 158 at 22-28, and 30-37, respectively.
[2] They suggest that XPO LM should be content with their unwritten promises, but that is a recipe for problems.
[3] *See, e.g., Brunet v. The Quizno's Franchise Co., LLC*, 2008 U.S. Dist. LEXIS 105603 (D. Co. Dec. 23, 2008).
[4] *See, e.g., Bowers v. Mortg. Elec. Reg.Sys., Inc.*, 2011 U.S. Dist. LEXIS 138782 (D. Kan. Dec. 2, 2011).
[5] *See, e.g., Loop AI Labs Inc. v. Gatti*, 2016 U.S. Dist. LEXIS 31893 (N.D. Cal. Mar. 10, 2016).
[6] *See, e.g., TV Interactive Data Corp. v. Sony Corp.*, 2012 U.S. Dist. LEXIS 5681 (N.D. Cal. Apr. 23, 2012).
[7] S*ee, e.g., 3M Co. v. Kanbar*, 2007 U.S. Dist. LEXIS 47513 (N.D. Cal. June 19, 2007).

- As drafted (and as plaintiffs confirmed in the meet and confer process) Topic 1 seeks testimony about the "policies practices and procedures for fulfilling [XPO LM's] contractual obligations" to its customers. This information is irrelevant.

- Topic 5 seeks information about every detail concerning every contract termination involving Contract Carriers and is comprised of 10 topics. As drafted, this topic is overbroad, lacks specificity, and seeks information better sought through other discovery mechanisms.

- Topic 7 spans multiple pages and demands information about every aspect of XPO LM's information technology systems, including the "creation" "capabilities" and "architecture" of its intranet, web-based phone applications, software programs, web-portals and reporting mechanisms. On its face, this is irrelevant and overbroad, disproportionate to the needs of this case.

- Topic 10 seeks testimony on anything and everything about XPO LM's "financial" and "productivity" data, the subjects of which are defined in an exhibit attached to the deposition notice. This category is not reasonably specific. XPO LM must use its discretion to interpret the bounds of this topic and it is, thus, not reasonably specific. This information is also irrelevant.

- Topic 14 seeks a deponent to testify about the identities of all persons responsible for creating and finalizing delivery manifests, by profit center and location throughout CA for 66 profit centers. This category seeks information more appropriately sought through another discovery mechanism.

- Topic 33 seeks information about the "procedures and protocols" that XPO LM follows when "preparing, obtaining approval, and updating for periodic budgets for any California XPO market, profit center…." The budgeting process is not relevant to independent contractor classification or any other issue of liability.

These examples are illustrative only. XPO LM's complete objections and designations (in which it attempted to reformulate the matters for examination with appropriate boundaries) are set forth in Exhibit A. Plaintiffs rejected most of XPO LM's designations, arguing they are merely "semantics." Even though the proposed revisions are supposedly "semantics," plaintiffs refuse to adopt them. On one hand, plaintiffs suggest they will not seek testimony about the matters they have admitted are overly broad, but on the other they insist "that XPO is obligated to" adequately prepare a witness on all matters reasonably known to the corporation <u>as defined by the notice of deposition</u>. Consequently, XPO must seek a protective order to limit the matters for examination.

In sum, the *Carter* Notice suffers from a variety of problems and must be limited so that XPO LM has an opportunity to prepare, adequately and properly, witnesses who can testify on its behalf. As a result, XPO LM seeks an order protecting it from responding to the *Carter* Notice, and staying its obligation to appear in response to the *Ibanez* and *Garcia* while the *Carter* Notice

jackson|lewis.

Hon. William H. Orrick
April 2, 2018
Page 4

is narrowed. Alternatively, XPO LM requests that the *Carter* notice be quashed in its entirety. Accordingly, Plaintiffs' request regarding sanctions should also be denied.

## II. Plaintiffs' Positions.

XPO's belated motion for a protective order from the *Carter* First Amended 30(b)(6) deposition notice served on February 21 is a blatant attempt to further delay the deposition currently scheduled for April 5, which was the subject of the Court's March 21 Order, Case No. 16-1231 Dkt. No. 162. Plaintiffs regret that this matter has to be brought before the Court again, and agree with the Court that reasonable attorneys should be able to work these issues out. However, that is difficult when one party is not acting in good faith. Plaintiffs ask that the Court deny XPO's frivolous motion for a protective order; order XPO to produce Duane Duenkel for a deposition on April 5 as agreed; and grant Plaintiffs leave to file a motion for sanctions.

### *Plaintiffs' Renewed Motion to Compel*

On March 16, counsel in all of the related cases participated in a scheduling call and agreed upon a global deposition schedule. At that time, counsel agreed that, subject to the Court granting the parties' request to extend the class certification briefing and hearing dates, the 30(b)(6) depositions for all three cases would proceed in New York on April 5 and in Atlanta for two days during the timeframe April 17-19. The Court granted the parties' requested extension, and also ordered XPO to disclose the name of the deponent being produced and the topics on which he will testify ten days before each 30(b)(6) deposition. Case No. 16-1231 Dkt. No. 162. The Court's Order did not address scheduling issues, based on XPO's representation that the parties had agreed to proceed with the 30(b)(6) depositions on April 5 and 17-19 and that Plaintiffs' requests would be rendered moot if the Court granted the requested extension.

Pursuant to the Court's order, XPO notified counsel on March 26 that Duane Duenkel would be produced to testify in Syracuse, New York on April 5 regarding eight topics in the *Carter* notice and five topics in the *Ibanez* notice. However, on March 28, XPO advised the parties that "April 5 does not actually work" due to a "scheduling issue." XPO has since clarified that "lead counsel is not available." But Jeff Newhouse – who Plaintiffs have always believed is XPO's "lead counsel" – participated in the scheduling call and agreed to the April 5 date. *Carter* Plaintiffs' counsel notified XPO that they would not agree to take the April 5 deposition off calendar absent good cause, and good cause does not exist here. Only then did XPO notify Plaintiffs of its intention to seek a protective order – a tactic clearly designed to delay the deposition, or avoid it altogether.

These depositions cannot be delayed any longer if Plaintiffs are to be prepared to meet the schedule for class certification briefing. The April 5 deposition in Syracuse, New York requires a full day of travel each way and, based on the discussions during the March 16 scheduling call, it is apparent that there is not another three-day block of time that counsel for all parties are available to attend a deposition in Syracuse over the next six weeks. Plaintiffs have proposed that the deposition be held in San Francisco if the deposition does not go forward in Syracuse on April 5,

jackson|lewis.

Hon. William H. Orrick
April 2, 2018
Page 5

but XPO would not agree to that solution; nor has XPO proposed any other alternatives. *See Reno Contracting, Inc. v. Phila. Indem. Ins. Co.*, 2017 U.S. Dist. LEXIS 206025, at *4 (S.D. Cal. Dec. 14, 2017) (Ordering that a corporate designee be deposed in San Diego instead of Philadelphia where all counsel were located in Southern California and where holding the deposition in Philadelphia would require travel by a greater number of individuals.)

Plaintiffs respectfully request that the Court order XPO to produce Duane Duenkel for deposition in Syracuse, New York on April 5 as previously agreed. In the alternative, Plaintiffs ask that the Court order XPO to produce Mr. Duenkel for deposition in San Francisco on a date acceptable to all parties involved and to pay any costs incurred by Plaintiffs in connection with their Syracuse travel arrangements.

### *XPO's Motion for Protective Order*

*Carter* Plaintiffs met and conferred with XPO over the scope of the 30(b)(6) notice on February 28 and March 5, and Plaintiffs clarified all of the topics XPO now complains of. Following the February 28 meet and confer call, *Carter* Plaintiffs wrote to XPO to clarify, *inter alia*, that "the focus of the deposition – topic by topic – will be on (1) XPO's policies, procedures and practices as they pertain to the Contract Carriers and the work they perform, (2) the authority and discretion of XPO employees to promulgate, enforce, apply, modify and/or deviate from those policies, practice and procedures, and (3) XPOs recordkeeping policies, procedures and practices." *See* Case No. 16-1231 Dkt. No. 161-2. Plaintiffs also clarified, with respect to Topic 7, that Plaintiffs were not "looking for a programmer who can testify about computer code. But we are entitled to know what electronic records XPO has maintained, and how the data and records can be queried to determine facts relevant to the case." *Id.*

Following the March 5 meet and confer call, *Carter* Plaintiffs provided a lengthy written response to XPO's objections regarding the scope of the notice, topic by topic, and asked XPO to respond as soon as possible. *See* Case No. 16-1231 Dkt. No. 161-3. For example, with respect to Topic 5, Plaintiffs clarified that the focus of the deposition would not be on granular details such as "information about every detail concerning every contract termination," but instead would be on "(a) who within the XPO has had the authority both *to recommend* and also *to approve and implement* DSA terminations (whether by name, position, or both) and (b) the considerations that inform such decisions such as the types of conduct and behaviors that, in XPOs view, breach the broadly described service standards set forth in the DSA including, e.g. Section 3.1." *Id.*

XPO's position statement ignores the parties' meet and confer communications and misrepresents *Carter* Plaintiffs' positions. *Carter* Plaintiffs have made clear that they expect the corporate designees to testify regarding the topics set out in the notice, as clarified by Plaintiffs during our meet and confer efforts. In the four weeks that have passed since *Carter* Plaintiffs provided their response to XPO's objections, XPO does not deny that it has never responded and has made no further efforts to meet and confer. *Carter* Plaintiffs wrote to XPO on March 20 to reiterate that they were waiting for a response to their March 5 communication and that they were

jackson|lewis.

Hon. William H. Orrick
April 2, 2018
Page 6

"willing to continue discussing the scope of the corporate designee testimony" if there were genuine areas of disagreement to be resolved, bluntly telling XPO: "The ball is in your court." XPO never responded to that communication either. Having failed to exhaust the meet and confer process and proceeding with scheduling the April 5 deposition, XPO cannot now demonstrate good cause for a protective order. When XPO unilaterally canceled the April 5 deposition, it did not raise any issues regarding the scope of the *Carter* notice. Upon learning that Plaintiffs intended to pursue an order compelling the deposition to take place as scheduled, XPO moved for the instant protective order, pointing to alleged overbroad subject areas rather than its stated last minute scheduling conflict. This is obviously a disingenuous basis for a protective order. Plaintiffs request that the Court deny XPO's request for a protective order, and grant Plaintiffs leave to file a motion for sanctions to seek compensation for counsel's time involved in responding to XPO's frivolous motion.

Respectfully submitted,

JACKSON LEWIS P.C.

*/s/ Fraser A. McAlpine*

Fraser A. McAlpine