Jennifer Keating, SBN 250857
Amy Endo, SBN 272998
Giselle Olmedo, SBN 294750
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
Email: jkeating@leonardcarder.com
Email: aendo@leonardcarder.com
Email: golmedo@leonardcarder.com

*Attorneys for PLAINTIFFS*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON CARTER, JUAN ESTRADA, JERRY GREEN, BURL MALMGREN, BILL McDONALD, and JOEL MORALES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LAST MILE, INC. and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO.   3:16-cv-01231-WHO<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION**<br><br>Hearing Date:   May 29, 2019<br>Time:   2:00 p.m.<br>Location:   Courtroom 2, 17th Floor<br>Judge:   Hon. William H. Orrick |

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.   INTRODUCTION......................................................................................................... 2

II.  BACKGROUND............................................................................................................ 3

   A.   Plaintiffs' Factual Allegations ................................................................................ 3

   B.   Procedural Background ........................................................................................... 4

III. PROPOSED SETTLEMENT ....................................................................................... 5

   A.   Settlement Class Definitions .................................................................................. 5

   B.   Plan of Allocation .................................................................................................. 6

      1.   Net Settlement Fund .................................................................................... 6

      2.   Attorneys' Fees and Costs ........................................................................... 7

      3.   Class Representative Service Awards .......................................................... 8

      4.   Proposed Settlement Administrator and Fees for Administration of Settlement.......... 8

      5.   LWDA Payment ........................................................................................... 9

   C.   Notice Procedure .................................................................................................... 9

IV.  ARGUMENT ................................................................................................................ 9

   A.   Conditional Certification of the Rule 23 Class is Appropriate................................ 9

      1.   The Settlement Class Satisfies the Requirements of Rule 23(a)................... 10

      2.   The Settlement Class Meets the Requirements of Rule 23 (b)(3)................. 12

   B.   Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate ................................................................................................................ 12

      1.   Settlement is the Product of Informed, Non-Collusive Negotiation............. 13

      2.   The Settlement Falls Within the Range of Possible Approval ..................... 13

        a.   The Relative Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval.................................................................... 14

        b.   The Benefit Conferred by the Settlement Balances in Favor of Approval .................. 17

      3.   Extent of Discovery Completed Supports Preliminary Approval................. 17

      4.   Experience and View of Counsel Support Preliminary Approval ............... 18

      5.   The Scope of the Release Provision in the Settlement Agreement is Appropriate....... 18

      6.   Timeline ...................................................................................................... 18

      7.   Class Action Fairness Act (CAFA)............................................................. 19

      8.   Other Agreements Made in Connection with the Proposed Settlement Agreement..... 19

      9.   Lead Counsels' Past Distributions .............................................................. 19

      10.  The Proposed Class Notice is the Best Notice Practicable .......................... 20

V.   CONCLUSION ............................................................................................................. 21

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

**TABLE OF AUTHORITIES**

**Cases**

*Boyd v. Avanquest N. Am., Inc.*,
No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ....................................... 9

*Custom Led, LLC v. eBay, Inc.*,
No. 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) ..................................... 12

*Dynamex Operations West, Inc. v. Superior Court*,
4 Cal.5th 903 (2018)......................................................................................................... 16

*EEOC v. Kovacevich "5" Farms*,
No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007).......................... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 10, 11, 12

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................... 12

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011) ........................................................................................... 7

*In re Tableware Antitrust Litig.*,
484 F.Supp.2d 1078 (N.D. Cal. 2007).......................................................................... 13, 14

*Larsen v. Trader Joe's Co.*,
No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) .................................. 18

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ........................................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................... 13, 14

*Ohayon v. Hertz Corp.*,
No. 5:11-cv-01662 EJD, 2012 WL 4936058 (N.D. Cal. Oct. 16, 2012) ................................. 21

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*,
48 Cal. 3d 341 (1989) ...................................................................................................... 16

*Satchell v. Fed. Express Corp.*,
No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ......................................... 13

*Smith v. Cardinal Logistics*,
No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008)............................................ 10

*Soc. Sers. Union, Local 535 v. County of Santa Clara*,
609 F.2d 944 (9th Cir. 1979) ........................................................................................... 11

*Villegas v. J.P. Morgan Chase & Co.*,
No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................. 13, 17

**Statutes**
28 U.S.C.
§1715(b) ......................................................................................................................... 19
49 U.S.C.
§14501 ............................................................................................................................ 16
Cal. Labor Code
§2699(i) ........................................................................................................................... 9
Fed. R. Civ. P. Rule
23 ............................................................................................................................. *passim*

**Other Authorities**
Manual for Complex Litigation
§21.632 (4th ed. 2004).................................................................................................... 10

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on May 29, 2019 at 2:00p.m., or as soon thereafter as the

3   matter may be heard, in the courtroom of the Hon. William Orrick, United States District Court for

4   the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California

5   in Courtroom 2, 17th Floor, Plaintiffs Ronnel Carter, Juan Estrada, Jerry Green, Burl Malmgren,

6   Bill McDonald and Joel Morales ("Plaintiffs") will and hereby do respectfully move this Court for

7   preliminary approval of the proposed Collective and Class action settlement.

8      Plaintiffs request that this Court enter an Order (1) conditionally certifying the Rule 23

9   settlement class; (2) granting preliminary approval to the proposed Class and Collective Action

10  Settlement; (3) appointing Plaintiffs as class representatives of the Class and as representative

11  Plaintiffs for the collective action; (4) appointing Plaintiffs' attorneys as Class Counsel; (5)

12  appointing Settlement Services, Inc. ("SSI") as Settlement Administrator; (6) approving the form,

13  content, and method of distribution of the Notice of Class Settlement; (7) scheduling a hearing

14  regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees

15  and costs, and Service Awards to the Named Plaintiffs.

16      This motion is made on the ground that proposed settlement is the product of arm's length

17  negotiations by qualified class counsel with the assistance of an experienced and renowned neutral

18  mediator.  Its terms are fair, reasonable and adequate in light of the risks the Plaintiffs and Class

19  Members face in connection with continuing to litigate liability, and proof of damages.  Defendant

20  does not oppose this motion.

21      This motion is based on this Notice of Motion, the accompanying Memorandum of Points

22  and Authorities; the Declaration of Jennifer Keating and Exhibits thereto; the Proposed Order; the

23  Court's record of this action; all matters of which the Court may take notice, and any other such

24  evidence, briefing, or argument that may be presented to the court at or before the time of hearing.

25  DATED:  April 18, 2019                    Respectfully submitted,

26                                            **LEONARD CARDER, LLP**

27                                            By:_____*/s/ Jennifer Keating*_____
                                                     Jennifer Keating
28                                                   *Attorneys for Plaintiffs and the Putative Class*

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

**I.      INTRODUCTION**

Plaintiffs Ronnel Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales ("Named Plaintiffs" or "Class Representatives"), seek preliminary approval of a $16,500,000.00 collective and class action settlement on behalf of approximately 847 current and former delivery drivers ("Contract Carriers," "Drivers," or "Class Members") working for XPO Last Mile, Inc. ("XPO LM" or "Defendant") during the Class Period[1] to resolve federal and state wage and hour claims.  The gravamen of Plaintiffs' Complaint is that XPO LM misclassified the Drivers as "independent contractors," when in law they were employees entitled to the protections of federal and state wage and hour laws.  Plaintiffs allege that Defendant failed to pay them minimum and overtime wages, reimburse for business expenses, provide duty-free meal periods, premiums for missed meal breaks, provide paid duty-free rest periods, premiums for missed rest periods, maintain accurate records, and provide accurate wage statements, made unlawful deductions, and that they are due waiting time, PAGA, and other civil penalties.  The settlement provides substantial relief to all Class Members.  There will be no submission of claims, documentation, or proof required of any Class Member to participate in the settlement.

The proposed settlement is the product of arm's length negotiations by experienced counsel with a neutral and well-regarded mediator.  It is fair, reasonable and adequate in light of the risks the Plaintiffs and Class Members face in connection with continued litigation over class membership, liability, proof of damages, and other defenses asserted by Defendant.  Accordingly, Plaintiffs request that the Court (1) conditionally certify the Rule 23 settlement class; (2) grant preliminary approval to the proposed Class and Collective Action Settlement; (3) appoint Plaintiffs as class representatives of the Class; (4) appoint Plaintiffs' attorneys as Class Counsel; (5) appoint Settlement Services, Inc. ("SSI") as Settlement Administrator; (6) approve the form, content, and

---

[1]  The Class Period is March 12, 2012 through February 21, 2019.  Declaration of Jennifer Keating in support of Preliminary Approval ("Keating Decl."), Exh. 1 - Settlement Agreement and Release of Claims ("Settlement Agreement" § I.7).

1   method of distribution of the Notice of Class Settlement; and (7) schedule a hearing regarding final

2   approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and

3   service awards to the Named Plaintiffs.

4   **II.     BACKGROUND**

5      **A.  Plaintiffs' Factual Allegations**

6          XPO LM contracts with several retailers to arrange for delivery and basic installation

7   services of appliances, furniture and other merchandise to residential customers.  Named Plaintiffs

8   and putative Class Members performed these delivery services pursuant to standard form contracts

9   known as Delivery Service Agreements ("DSA"), which their companies entered into with XPO

10  LM or its predecessor 3PD, Inc., and which purported to classify them as independent contractors.

11  Pursuant to the terms of the DSA, Named Plaintiffs and putative Class Members were required to

12  perform their delivery services in accordance with detailed service requirements set out in the

13  agreements entered into between XPO LM and its retail customers and, in some instances, related

14  standard operating procedures.  For many of its customers, XPO LM created and assigned delivery

15  routes, and monitored delivery performance in real time and through the use of customer surveys.

16         XPO LM paid Named Plaintiffs and putative Class Members in accordance with Schedule

17  A to the DSA, which set out either a per-stop rate or a flat daily or weekly amount, determined by

18  XPO LM based on the retail customer and location, as well as any applicable incentives,

19  surcharges or other incidental payments.  XPO LM paid the Named Plaintiffs' and putative Class

20  Members' businesses on a weekly basis by direct deposit.  A third party settlement company issued

21  settlement statements showing the contractual remuneration and deductions for the relevant period.

22  Pursuant to the DSA, Named Plaintiffs' and putative Class Members' companies bore common

23  categories of expenses to perform delivery services for XPO LM, including: vehicle depreciation,

24  fuel, tolls, maintenance, and insurance; workers' compensation and general liability insurance;

25  uniforms; payroll administrative costs; and payments to their drivers and helpers.  XPO LM did not

26  keep track of hours worked by Named Plaintiffs and putative Class Members and did not pay any

27  overtime compensation.  Nor did XPO LM have any policy to provide Named Plaintiffs and

28  putative Class Members with meal and rest periods.

**B. Procedural Background**

On March 11, 2016, Named Plaintiffs filed this action in the United States District Court – Northern District of California, asserting various claims under the California Labor Code and the federal Fair Labor Standards Act ("FLSA").  On June 9, 2016, Plaintiffs filed their First Amended Complaint adding claims for penalties under the Private Attorneys General Act ("PAGA").  Dkt. No. 33.

In October 2016, the Court granted Named Plaintiffs' motion for conditional certification of a collective action under the FLSA, facilitating notice to individuals whose companies had entered into a DSA and who personally worked as delivery drivers for XPO LM in California.  Dkt. No. 61.  Notice of conditional certification was issued and approximately 115 individuals opted into the collective action. Dkt. No. 139.

This Action was related to two others (Dkt. No. 83), and the parties involved in all three cases stipulated to, and the Court issued, an Order Defining the Respective Classes in the three related cases.  Dkt. Nos. 83 and 101.

Thereafter, the Parties in this Action engaged in extensive written and documentary discovery.  In response to Named Plaintiffs' discovery requests, and after numerous discovery disputes, XPO LM ultimately produced hundreds of thousands of documents.  Keating Decl., ¶ 6. Named Plaintiffs deposed three XPO LM corporate designees, the senior Vice President responsible for operations in California, and seven managers responsible for various markets throughout California, with depositions taking place at various locations throughout California and in Atlanta, Georgia.  *Id.*  Named Plaintiffs also attended the deposition of a manager employed by one of XPO LM's retail clients, which was taken in one of the related cases.  Counsel for Named Plaintiffs also conducted extensive interviews with approximately 80 individuals who opted into the collective action for the purpose of collecting information in support of class certification.  *Id.*

XPO LM obtained documentary discovery from the Named Plaintiffs as well as 26 collective action opt-ins.[2]  Keating Decl., ¶ 7.  XPO LM deposed the Named Plaintiffs as well as

---

[2]  Five of the 26 opt-ins initially served with document requests did not respond and had their FLSA claims dismissed with prejudice.  Dkt. No. 165.  XPO LM selected five additional opt-ins,

1    several collective action opt-ins and several contractors who did not personally drive for XPO LM

2    and are not part of any putative class.  *Id.*

3         The Parties attended mediation of this Action on October 25, 2018, in San Francisco, and

4    on November 13, 2018, in Toronto, before mediator Michael Dickstein, Esq., a nationally

5    recognized class action wage and hour mediator.  The case settled in principle late in the evening of

6    the second day of mediation, after the mediator issued a mediator's proposal.  Keating Decl., ¶ 8.

7    Prior to the mediation, XPO LM provided Named Plaintiffs with a large volume of damages data

8    regarding the work performed by the putative Class Members to allow an expert retained by

9    Named Plaintiffs to estimate, *inter alia*, the hours worked and expenses incurred by putative Class

10   Members, for the purpose of building a damages model.  *Id.*  Had the parties been unable to resolve

11   the case on November 13, Named Plaintiffs were preparing to file a motion for class certification

12   on December 14, 2018.  *Id.*; Dkt. No. 170.

13   **III.    PROPOSED SETTLEMENT**

14        The details of the Settlement are set forth in the Settlement Agreement and Release of

15   Claims. (Keating Decl., Ex. 1.)  A summary is set forth below:

16   **A. Settlement Class Definitions**

17        This Action includes two classes -- a Collective Action Opt-In Settlement Class for FLSA

18   claims, and a Rule 23 Class for all California wage and hour claims.  The Collective Action Opt-In

19   Class definition remains unchanged from the Court's October 2016 order granting conditional

20   certification.  (Dkt. No. 61).

21        As to the Rule 23 Class, XPO LM agrees, for settlement purposes only, to certification of

22   the following class:

23            All persons who (a) entered into a Delivery Service Agreement either in his or
              her individual capacity or through a business entity with XPO LM or 3PD,
24            and (b) according to XPO LM's records was a driver who performed delivery
              services pursuant to that Delivery Service Agreement, and (c) performed a
25

26   _____

27   who had not all completed their document production at the time the parties reached a settlement in
     the case.  Keating Decl., ¶ 7.  Those who had their FLSA claims dismissed with prejudice will not
28   be eligible to share in the distribution to the collective action opt-ins, but will be eligible to share in
     the distribution to the Rule 23 settlement class.

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION
Case No. 3:16-cv-01231-WHO

portion of those delivery services within the state of California at any time during the Class Period [March 12, 2012 through February 21, 2019].

The proposed Rule 23 Class definition is different from the definition in the operative complaint in the following respects: 1) it finalizes the Class Period end date, and 2) further identifies which drivers are covered by this Action. The amended proposed settlement class sets the end date at February 21, 2019, rather than through trial. Settlement Agreement § I.7. The definition also specifies that individuals who entered into Delivery Service Agreements with XPO LM predecessor 3PD may be part of the class and that only drivers identified by XPO LM's records as performing delivery services will be covered by this Settlement Agreement. This is appropriate to ensure ascertainability of the class. Based on XPO LM's records, there are approximately 847 individuals within the Rule 23 Class. Settlement Agreement § III.2.

**B. Plan of Allocation**

The Settlement requires XPO LM to create a non-reversionary $16,500,000 gross Settlement Fund. In addition, XPO LM will separately pay for the "employer's share" of employment taxes. Settlement Agreement § III.1. The Settlement Fund will be allocated to pay the (a) Rule 23 Class individual settlement amounts, (b) Collective Action Opt-In Class settlement amounts to resolve FLSA claims, (c) Class Counsel fees and expenses, (d) Class Representative service awards, (e) PAGA payment, (f) Settlement Administrator Fees and Costs; and (g) the Cy Pres[3] Award, if any.

**1. Net Settlement Fund**

The Net Settlement Fund is estimated to be approximately $12,054,500.00, to be allocated as follows: 1) distribution for funds allocated to resolving the FLSA claims asserted by the Collective Action Opt-In Class; and 2) distribution for funds allocated to all Class Members to

---

[3] The Parties propose Legal Aid at Work, a non-profit organization providing free legal employment services to low wage workers, as the *cy pres* recipient. Legal Aid at Work is related to the subject matter of the lawsuit and the class members because its Wage Protection program helps low-wage workers, with similar if not identical claims of violations including minimum wage, overtime, meal and rest period, unlawful deductions, and unreimbursed business expenses. Leonard Carder has co-counseled with Legal Aid at Work on two wage and hour cases in recent years. One of the partners at Leonard Carder is on the Legal Aid at Work Board of Directors and several Leonard Carder attorneys volunteer at workers' rights clinics operated by Legal Aid at Work. Keating Decl., ¶ 13.

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

resolve the California state law claims.  The former will include a $150,000 allocation to the Collective Action Opt-In Class in consideration of the release of their FLSA claims.  Each Collective Action Opt-In will receive a pro-rata share based on the number of Contract Days -- each day that the Carrier is identified as having provided delivery services for XPO LM in California pursuant to his or her Delivery Service Agreement during the Class Period -- worked relative to the total number of Contract Days worked by all Collective Action Opt-Ins during the Class Period per XPO LM's records.

The remainder of the Net Settlement Fund, approximately $11,904,500.00, will be distributed to all Rule 23 Class Members who do not opt out.  The distribution will be based on the same pro-rata formula comparing each Class Member's Contract Days worked to the total number of Contract Days for all Settlement Class Members per XPO LM's records.[4]  Class Members are not required to submit a claim form to participate in the distribution of the Settlement.

### 2.  Attorneys' Fees and Costs

The Settlement Agreement permits Plaintiffs' counsel to submit an application for an award of attorneys' fees and costs in an amount up to 30% of the $16,500,000 gross Settlement Fund. Settlement Agreement § III.6.  However, at the final approval hearing, Plaintiffs' counsel will move the Court for an award of attorneys' fees and costs in the amount of $4,125,000, which represents 25% of the gross Settlement Fund, the presumptively reasonable "benchmark" for awarding fees in the Ninth Circuit.  *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011).[5]

---

[4]  Collective Action Opt-Ins, by definition, are also members of the Rule 23 Class, and will receive a pro rata share from both distributions.

[5]  As of February 28, 2019, Plaintiffs' counsel's lodestar amount is approximately $2,599,442.07. As of that date, Counsel has billed a total of 3,889.4 attorney hours at conservative market hourly rates from $440 to $860 and 829.9 paralegal/law clerk hours at $225 per hour, and incurred costs in the amount of $125,565.57.  Keating Decl., ¶ 14.  Thus the requested fees of $4,125,000, which includes costs, represents approximately 158.7% of counsel's lodestar, i.e., a multiplier of 1.587. Counsel will provide evidence and support for the requested fees and costs with their application for fees and costs.  Counsel will file their application with the Court within 20 days after preliminary approval is granted, to ensure that Class Members have sufficient time to review the fee request and have ample time to consider the request prior to the deadline for objecting.

### 3. Class Representative Service Awards

The Settlement provides that Named Plaintiffs may petition the Court for service awards of up to $20,000 each, representing $120,000 in the aggregate. This is in addition to any distribution to which they may otherwise be entitled to as Settlement Class Members.  These amounts are to compensate Named Plaintiffs for 1) the significant time and effort Plaintiffs have spent on behalf of the Settlement Class in this Action, including assisting in the investigation, participating in extensive discovery, and consulting with counsel regarding all aspects of the litigation and settlement, and 2) the releases they are providing pursuant to the Settlement Agreement, which are broader than those of other Class Members.  Settlement Agreement §§ III.3, IV.3.

At the final approval hearing, Plaintiffs' counsel will move the Court for service awards totaling $102,500. [6]  Counsel will provide evidence and support for the requested service awards at the time they submit their fee application.

### 4. Proposed Settlement Administrator and Fees for Administration of Settlement

Subject to Court approval, the parties propose SSI to serve as the Settlement Administrator. The Parties contacted SSI, Simpluris and KCC to obtain settlement proposals from each.  SSI provided the lowest bid.  Keating Decl., ¶ 12.  SSI also acted as the administrator of the FLSA collective action notice procedure in this case after conditional certification was granted in October 2016.  *Id.*

SSI will be paid from the gross Settlement Fund.  The estimated fees and costs to effectuate the administration of the settlement are not to exceed $50,000.  These costs are reasonable, as they represent no more than 0.3% of the settlement.  If the fees charged by the Settlement Administrator are less than $50,000, the amount will be returned to the Settlement Fund for distribution to the Settlement Class.  Settlement Agreement § III.8.

---

[6] Plaintiffs' counsel intends to petition the Court for a lower service award, in the amount of $2,500, for Plaintiff Juan Estrada who passed away early in the litigation, and $20,000 for each of the remaining five Named Plaintiffs, who participated more extensively in the litigation.  Any reduced service award funds will be reallocated to the Net Settlement Fund for distribution to the Class.

1

### 5.  LWDA Payment

The parties have agreed to pay the LWDA $18,000 (75% of a $24,000 PAGA penalty allocation) pursuant to Cal. Labor Code §2699(i).  Defendant will provide a copy of the Agreement to the LWDA at the time the Agreement is submitted to the Court for approval per Cal. Labor Code §2699(l)(2).  Settlement Agreement § III.7.

### C.  Notice Procedure

Within 14 days after preliminary approval is granted, Defendant will provide the Settlement Administrator with the Settlement Class Members' contact information, including last known addresses, telephone and email.  The Settlement Administrator will send the Notice to Collective Action Opt-Ins and Class Members via first-class mail and email within 21 days of the Preliminary Approval date.  Settlement Agreement § V.4.  For undeliverable Class Notices, the Settlement Administrator will attempt to locate the Class Members' updated addresses through people-finder software, or equivalent program, and skip-trace searches.

The Notice will include: 1) contact information for class counsel; 2) the website address with links to case documents; 3) instructions on how to access the case docket via PACER or in person; 4) the date of the final approval hearing; 5) instructions on how to opt-out and associated deadlines; and 6) the deadline for submission of any objections.  Settlement Agreement, Exhibit A.

## IV.     ARGUMENT

Federal Rule of Civil Procedure 23 requires Court approval for the proposed settlement, voluntary dismissal or compromise of a certified class or a class proposed to be certified for purposes of settlement.  Fed. R. Civ. P. Rule 23(e).  The Court's "role in evaluating a proposed settlement is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned."  *Boyd v. Avanquest N. Am.*, *Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137 *2 (N.D. Cal. July 17, 2015).

### A.  Conditional Certification of the Rule 23 Class is Appropriate

In order to review the sufficiency of the settlement, the Court must first determine that the proposed class satisfies the criteria set out in Federal Rules of Civil Procedure Rule 23(a),

9

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

1    specifically that: (1) the class is so numerous that joinder would be impracticable; (2) there are

2    questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the

3    claims of the proposed class; and (4) the named plaintiffs and their counsel will adequately and

4    fairly represented the interests of the class.  *See* Manual for Complex Litigation §21.632 (4th ed.

5    2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  Additionally, the action

6    must be maintainable under Fed. R. Civ. P. 23(b) (1), (2), or (3).  *Hanlon v. Chrysler Corp.*, 150

7    F.3d at 1022.  Based on these standards, as further discussed below, the Court should certify the

8    proposed Class for settlement purposes.

9          **1.   The Settlement Class Satisfies the Requirements of Rule 23(a)**

10        The proposed Settlement Class satisfies all the requirements of Rule 23 (a).

11        <u>First</u>, the Settlement Class is sufficiently numerous that it makes joinder impracticable.

12    Fed. R. Civ. P. 23(a)(1).  Courts have generally found a class of at least 40 members meets the

13    numerosity requirement.  *See, e.g., EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165

14    OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007).  Here, the proposed Class has

15    approximately 847 drivers, and easily meets this standard.

16        <u>Second</u>, commonality is satisfied because there "are questions of law and fact common" to

17    the proposed Class.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)

18    ("Commonality only requires a single significant question of law or fact."); *Smith v. Cardinal*

19    *Logistics*, No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) (common issues

20    predominate on questions of whether delivery drivers misclassified as independent contractors).

21    Here, there are several common liability issues, namely, whether: (1) class members have been

22    misclassified as independent contractors; (2) class members are entitled to the protections of

23    various protections of the California Labor Code; (3) XPO LM has violated its legal obligations

24    under various provisions of the California Labor Code; and (4) XPO LM's actions constitute

25    violations of the California Unfair Competition Act.

26        <u>Third</u>, the typicality requirement of Rule 23 (a)(3) is satisfied because Named Plaintiffs'

27    claims are typical of the claims asserted on behalf of the Class.  Typicality is established if

28    representative claims are "reasonably co-extensive with those of absent class members; they need

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Named Plaintiffs' claims arise out of the same factual and legal circumstances as the claims of other Class Members: like all Class Members, Named Plaintiffs were misclassified as independent contractors, have been underpaid according to the California minimum wage and overtime laws, failed to receive compliant off-duty meal and rest periods, were not reimbursed for business expenses, did not receive accurate wage statements, and incurred unlawful deductions.  In addition, Class Members no longer providing services to XPO LM, like Named Plaintiffs, are entitled to waiting time penalties and other civil and PAGA penalties.

Fourth, Plaintiffs have fairly and adequately protected the interests of the class and will continue to do so.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class.  *Hanlon*, 150 F.3d at 1020; S*oc. Sers. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 946-47 (9th Cir. 1979).  Here, Named Plaintiffs share an interest to prosecute the claims on behalf of themselves and the Class, have vigorously prosecuted the claims, and have no conflicts of interest with Class Members.

In addition, Named Plaintiffs are represented by experienced counsel.  In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its representation.  Fed. R. Civ. P. 23(g).

Plaintiffs' counsel have actively identified, investigated and prosecuted the claims that are the subject of this Settlement; they have decades of extensive experience in class action litigation, including wage-and-hour claims of the type asserted here, have been appointed class counsel in numerous other cases; and have demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation.  Keating Decl., ¶¶ 2-8.  For these reasons, Plaintiffs' counsel and the Named Plaintiffs meet the adequacy requirement of Rule 23 (a)(4), and Plaintiffs' counsel should be appointed as Class Counsel pursuant to Rule 23(g).

**2.  The Settlement Class Meets the Requirements of Rule 23 (b)(3)**

The Settlement Class satisfies the requirements of Rule 23 (b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."

First, the Settlement Class satisfies the predominance requirement, which examines whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*  Here, as discussed above, common issues predominate because Plaintiffs' claims turn on a common liability issue suited to class-wide adjudication.

Second, Rule 23 (b)(3) is satisfied because resolution of the issues in this case on a class-wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 1023.  The alternative to a single class action -- numerous individual actions -- would be inefficient and unfair.  *See*, e.g., *Custom Led, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 4552789, at *5 (N.D. Cal. Aug. 27, 2013) (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations"); *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually. . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs.").

**B.  Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate**

Once the Settlement Class has been conditionally certified the Court can determine whether the proposed class action settlement warrants preliminary approval by determining the fairness, reasonableness and adequacy of the settlement terms, and, if so, direct that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

1   Courts should grant preliminary approval of a settlement if it "appears to be the product of

2   serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

3   grant preferential treatment to class representatives or segments of the class, and falls within the

4   range of possible approval." *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D.

5   Cal. 2007).  Courts should also apply their discretion in light of the judicial policy favoring

6   settlement of complex class action litigation.  *See, e.g., Officers for Justice v. Civil Serv. Comm'n*

7   *of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked

8   that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is

9   especially true in complex class action litigation . . . .").  As discussed below, application of the

10   relevant factors to this case supports preliminary approval.

11   **1.  Settlement is the Product of Informed, Non-Collusive Negotiation**

12   Adequate discovery and the use of an experienced mediator tend to support the conclusion

13   that settlement negotiations were informed and non-collusive.  *See Villegas v. J.P. Morgan Chase*

14   *& Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012);

15   *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13,

16   2007).

17   This Settlement Agreement was the result of thorough negotiations by experienced counsel

18   familiar with the applicable law, class action litigation, and the facts of this case.  The parties

19   engaged in extensive written and documentary discovery, and took more than twenty depositions.

20   Keating Decl., ¶¶ 6-7.  Plaintiffs' counsel also interviewed approximately 80 Collective Action

21   Opt-Ins.  Keating Decl., ¶ 6.

22   The settlement was reached only after a mediator's proposal was issued at the conclusion of

23   two days of mediation.  Keating Decl., ¶ 8.  Prior to the mediation, XPO LM provided a large

24   volume of damages data and Plaintiffs' counsel retained an expert to review and analyze the data

25   and estimate potential damages incurred by the Settlement Class.  *Id.*

26   **2.  The Settlement Falls Within the Range of Possible Approval**

27   In deciding whether the proposed settlement is adequate and falls within the range of

28   possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the

value of the settlement offer," taking into account the risks of continuing litigation.  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.  Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (internal quotations and citation omitted).  Here, the Settlement is fair, adequate, and well within the range of possible approval.

### a.   The Relative Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval

While Named Plaintiffs believe they have strong claims for liability, and that they would prevail on many if not all of their claims, Defendant has several legal and factual grounds to challenge certification, the merits, and damages in this action.  The compromise is based on the degree of risk, expense, complexity, and certainty of delay involved in further litigation.

Here, although the Parties have already engaged in significant discovery, substantial additional litigation would still be necessary to bring this case to a final resolution, including requiring Named Plaintiffs to obtain class certification, establish class-wide liability, and prove up various complex issues regarding damages.  Such efforts would likely take several years, and necessitate expert witness testimony, as well as other costs, risks and potential delays.  Appellate risks could further delay and jeopardize recovery.  By contrast, the Settlement ensures timely relief and substantial recovery of the wages and expenses that Named Plaintiffs contend are owed to the Settlement Class.

Class Certification:  XPO LM opposed Plaintiffs' motion to conditionally certify the collective action.  (Dkt. No. 57).  Similarly, it would oppose a motion by Plaintiffs' to certify the Rule 23 class.  In its earlier opposition, XPO LM argued that individual issues would predominate should this case proceed to trial.  Specifically, Defendants would assert that class certification is not appropriate because employment status can only be determined through an individualized fact-intensive inquiry.  It argued that the class lacked commonality for many reasons, including: (1) how the work is performed varied by market; (2) the applicability of the dispatch and delivery rules were not uniform; (3) the DSA's varied; (4) the amounts paid to putative Class Members varied,

---

14

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

and some negotiated over their pay; (5) some putative Class Members were able to refuse deliveries without consequence; and (6) some putative Class Members provided delivery services to multiple companies while others worked exclusively for XPO LM.  It would make these arguments, among others, to support its opposition to class certification, and Plaintiffs would have a higher burden than they faced at the conditional certification stage.

While Named Plaintiffs disagree with Defendant's position and believe that the claims would have been successfully tried on a class-wide basis through representative testimony from Class Members, XPO LM managers' and employees' testimony, statistical sampling and expert testimony, and company documents, they recognize that such procedures raise difficult management and proof issues.  Accordingly, there is a risk that the Court may have denied class certification or, if it initially certified the class, later decertified it if the trial procedures became unmanageable.

Arbitration:  In support of its opposition to Named Plaintiffs' motion for conditional certification, XPO LM relied in part on the fact that different versions of the DSA contained different arbitration provisions, which could give rise to different arguments over the substantive unconscionability over the various versions.  Dkt. No. 57 at p. 18.  XPO LM has not moved to compel arbitration, and Named Plaintiffs would argue that it has waived the right to do so. However, there remains a risk that the claims of some if not all of the putative Class Members could be forced into individual arbitration.

Employment Status:  XPO LM disputes that it had an employment relationship with the putative Class Members.  Its position is that it properly entered into non-exclusive delivery service agreements with the Named Plaintiffs' and putative Class Members' delivery businesses, and as a result, the Named Plaintiffs and putative Class Members were independent contractors because it asserts, for example, that they (and their businesses) could (1) contract with other delivery companies; (2) reject proposed assignments; (3) negotiate the terms and rates of the DSAs or particular deliveries; and (4) hire their own employees or contract with other independent contractors to complete deliveries accepted from XPO LM.

1   While Named Plaintiffs believe they would be able to prove employment status for claims

2   arising from California wage orders under *Dynamex Operations West, Inc. v. Superior Court*, 4

3   Cal.5th 903 (2018), and remaining Labor Code claims for reimbursement of employment expenses

4   and waiting penalties under the "right to control" *Borello* test, *S.G. Borello & Sons, Inc. v.*

5   *Department of Industrial Relations*, 48 Cal. 3d 341 (1989), they recognize there is a risk that the

6   Court may find that Named Plaintiffs and putative Class Members were correctly classified, in

7   which case their claims would fail entirely.

8   <u>Liability on Wage and Hour Claims</u>:  Named Plaintiffs also recognize that there is a risk on

9   the merits of their claims, as there would likely be disputes over several legal and factual issues.

10   For instance, XPO LM contends that Named Plaintiffs are not covered by state and federal

11   overtime provisions pursuant to the Motor Carrier Act ("MCA") exemption, and that some or all of

12   the statute and wage order provisions upon which Plaintiffs' claims are based are preempted by the

13   Federal Aviation Administration Authorization Act, 49 U.S.C. §§14501, *et seq.*

14   <u>Damage Issues</u>:  Even if Named Plaintiffs are able to establish liability, there are a number

15   of issues that could impact their ability to establish damages on a class-wide basis.  For instance,

16   XPO LM could argue that Named Plaintiffs and putative Class Members are not entitled to

17   reimbursement for expenses under Section 2802 of the California Labor Code – which represents

18   approximately 46% of Plaintiffs' counsel's maximum total estimated damages – because those

19   expenses were built into the rates XPO LM paid for their delivery services.  If Named Plaintiffs

20   and putative Class Members are entitled to reimbursement for their business expenses, they would

21   be required to prove up those expenses, which would present a number of issues.  Named Plaintiffs

22   also have a minimum wage claim valued at approximately $5,000,000 based on time spent at the

23   warehouse before and after their shifts that is not recorded.  Establishing the value of this claim on

24   a class-wide basis at numerous worksites throughout California would present issues of proof as

25   well.  Thus, there is a risk that any damage award obtained for the putative Class Members would

26   only be a fraction of the potential exposure calculated by counsel.

27

28

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION
Case No. 3:16-cv-01231-WHO

**b.  The Benefit Conferred by the Settlement Balances in Favor of Approval**

"[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment."  *Villegas,* 2012 WL 5878390, at *6 (internal quotations and citations omitted).

The Settlement will result in payment of a fair, reasonable and adequate award to class members, particularly in light of the litigation risks.  The Settlement affords relief to Class Members who likely would never have filed individual claims.  The $16,500,000 settlement amount represents approximately 20% of Plaintiffs' counsel's best estimate of the maximum verdict value of the Class' potential recovery of all wages, expenses, interest and penalties, assuming all factual and legal disputes would be resolved in Plaintiffs' favor and they would obtain the full value of their claimed damages.  Keating Decl., ¶ 9.  The settlement will result in a payment of approximately $70 for each day worked by the Settlement Class Members, with an additional $2.50 per day to the Collective Action Opt-Ins.  Estimated payments to the Settlement Class Members range from $70 to over $138,700, and average $14,222.82.  The additional payments to Collective Action Opt-Ins range from $2.50 to over $4,600, and average $1,530.61.  Keating Decl., ¶ 10.

**3.  Extent of Discovery Completed Supports Preliminary Approval**

Plaintiffs' counsel conducted extensive investigation and discovery.  The parties exchanged extensive written and documentary discovery, and conducted more than twenty depositions, while Plaintiffs' counsel also interviewed approximately 80 Collective Action Opt-Ins and engaged an expert to review and analyze voluminous damages data.  Keating Decl., ¶¶ 6-8.  The factual investigation, discovery and litigation conducted in this matter, enabled Plaintiffs' counsel to have a sound understanding of the merits of their positions and to evaluate the worth of the claims of the Settlement Class.  Based on the evidence and counsel's experience, Named Plaintiffs and their counsel were able to make an informed determination that the Settlement Agreement is in the best interests of the Settlement Class.  Keating Decl., ¶ 11.

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION
Case No. 3:16-cv-01231-WHO

1

### 4.   Experience and View of Counsel Support Preliminary Approval

"Parties represented by competent counsel are better position than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014).  In determining whether proposed settlements are fair, reasonable, and adequate, courts are entitled to give consideration to the opinions of competent counsel familiar with the case.  *Id.*  Here, Named Plaintiffs and the Settlement Class are represented by competent and experienced counsel, with decades of experience with wage and hour class actions, including cases in the delivery service industry.  Keating Decl., ¶¶ 2-4.  Counsel recommends the proposed settlement as fair, adequate and reasonable to the class members and in their best interests.  Keating Decl., ¶ 11.  Defendant does not oppose the motion.

### 5.   The Scope of the Release Provision in the Settlement Agreement is Appropriate

In return for the settlement award, Named Plaintiffs and Settlement Class Members will release claims in this Action.  The releases are separated into three groups -- releases for claims by Settlement Class Members, releases by Collective Action Opt-Ins, and releases by Class Representatives.  Settlement Agreement § IV(1)-(3).

The releases for the Settlement Class Members are limited to claims that were asserted in the operative complaint, or if not asserted which could have been asserted.  Such language is standard and is limited by language tying the release to the facts alleged in the operative complaint and related to, or arising from, the employment classification of the Settlement Class.  Collective Action Opt-Ins will additionally release claims against XPO LM under the FLSA.  Class Representatives will provide a general release.

### 6.   Timeline

| | |
|---|---|
| Within 14 days after Preliminary Approval | Defendant to provide Settlement Administrator and Class Counsel with Class Member information. |
| Within 20 days after Preliminary Approval | Plaintiffs' Counsel to file and serve application for attorneys' fees and costs and service awards for the Named Plaintiffs |
| Within 21 days after Preliminary Approval | Settlement Administrator to send Class Notice to Class Members by U.S. first class mail and |

| | email. |
|---|---|
| No later than 45 days after mailing of Class Notice | Class Members wishing to be excluded from the Settlement must send (by post-mark or fax) an Opt-Out request to the Settlement Administrator. |
| No later than 45 days after mailing of Class Notice | Class Members wishing to object to the Settlement must file a written objection with the Court and serve copies on Class Counsel. |
| TBD | Final Approval Hearing |
| 10 days after order approving Settlement becomes final. | XPO LM will deposit $16,500,000.00, plus an additional amount sufficient to pay the employer's share of employment and payroll taxes due, into an escrow account. |
| Within 7 days after deposit of Settlement Fund | Settlement Administrator to issue payment to:<br>- LWDA; and<br>- Class Counsel for fees and expenses. |
| No later than 10 days after deposit of Settlement Fund | Settlement Administrator to:<br>- mail first round of checks to Class Members; and<br>- issue service award payments to Class Representatives. |
| 90 days after first check distribution | Expiration of first round of settlement checks. Settlement Administrator to distribute and pay second round of payments to Class Members who cashed first round of checks. |
| 180 days after second check distribution | The amount of uncashed second round checks or remaining funds will be distributed to the *cy pres* recipient. |

## 7. Class Action Fairness Act (CAFA)

Defendant will issue notice of this Settlement as required by the Class Action Fairness Act under 28 U.S.C. §1715 no later than 10 days after this proposed Settlement is filed with this Court. Keating Decl., ¶ 16. Defendant's CAFA notice will comply with the requirements of 28 U.S.C. §1715(b).

## 8. Other Agreements Made in Connection with the Proposed Settlement Agreement

No other agreements were made in connection with the proposed settlement agreement.

## 9. Lead Counsels' Past Distributions

Lead counsel is experienced in litigating similar claims and issues, including a case against XPO LM predecessor 3PD.  In that case, Counsel litigated individual claims on behalf of seven

19

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

contract carriers, together with a representative claim for civil penalties and underpaid wages pursuant to the California Private Attorney General Act ("PAGA") set forth in California Labor Code §2698 *et seq.*, which resulted in confidential settlement payments to each of the individuals and $1,000,000 in PAGA penalties on behalf of 211 similarly situated aggrieved employees. Keating Decl., ¶ 15.

**10. The Proposed Class Notice is the Best Notice Practicable**

Under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1)(B)(2). The notice provided to members of a class certified under Rule 23(b)(3) must be "the best notice that is practicable." Fed.R.Civ.P. 23(c)(2)(B). The notice itself must be clear, concise and state:

> (i) The nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice and notice plan satisfy the requirements of Rule 23(c). In addition to including all the categories contemplated in Fed. R. Civ. P. 23(c)(2)(B), the notice contains (1) contact information for class counsel; (2) the settlement class website containing important documents pertaining to this case; (3) instruction on how to access the case docket; and (4) provides the details for the final approval hearing. Settlement Agreement, Exhibit A.

The proposed Notice procedure provides Class Members with the best notice possible. The parties have agreed, subject to Court approval, that within 21 days after an order granting preliminary approval the Settlement Administrator will mail notice via first class mail and email to the last-known addresses of the class members as provided by Defendant. The Settlement Administrator will use people-finder software, or equivalent, and skip-trace searches to attempt to locate addresses for undeliverable mail. In addition, the Settlement Administrator may call Settlement Class Members to attempt to obtain updated addresses, if and as necessary. Settlement

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION

Case No. 3:16-cv-01231-WHO

Agreement § V.4.  This method meets the requirements of due process.  *Ohayon v. Hertz Corp.,* No. 5:11-cv-01662 EJD, 2012 WL 4936058, at \*5-6 (N.D. Cal. Oct. 16, 2012) (Reasonable diligence to obtain addresses for returned mailings met the Rule 23 notice standards).

## V.        CONCLUSION

        For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify for settlement purposes the Settlement Class; (2) grant preliminary approval of the proposed Settlement; (3) appoint Leonard Carder, LLP as Settlement Class Counsel, (4) appoint Named Plaintiffs as Class Representatives; (5) appoint SSI as Settlement Administrator; (6) approve the content and method of distribution of the Notice of Class Settlement; and (7) and schedule a hearing regarding final approval of the proposed Settlement, Class Counsels' request for attorneys' fees and costs, and service awards to the Named Plaintiffs.

Dated:  April 18, 2019                    **LEONARD CARDER, LLP**


                                          By:   */s/ Jennifer Keating*
                                                Jennifer Keating, Esq.

                                                *Attorneys for Plaintiffs and the Putative Class*