Jennifer Keating, SBN 250857
Amy Endo, SBN 272998
Giselle Olmedo SBN 294750
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
Email: jkeating@leonardcarder.com
aendo@leonardcarder.com
golmedo@leonardcarder.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON CARTER, JUAN ESTRADA, JERRY GREEN, BURL MALMGREN, BILL McDONALD, and JOEL MORALES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LAST MILE, INC. and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 3:16-cv-01231-WHO<br><br>**DECLARATION OF JENNIFER KEATING IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION**<br><br>Hearing Date: May 29, 2019<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 17th Floor<br>Judge: Hon.William H. Orrick |

I, Jennifer Keating, declare as follows:

1. I make this statement based on my own personal knowledge. I am a partner at the law firm of Leonard Carder, LLP ("Leonard Carder"), attorneys of record for Plaintiffs in this case. I am licensed to practice before this Court and the courts in this state. I am competent to testify to the facts in this declaration and would and could testify to them if called upon to do so. I make this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification.

2. Leonard Carder was founded roughly eighty years ago and specializes in labor and employment law. The firm – which now includes approximately twenty-five attorneys – represents clients throughout the state of California, including labor unions and associated trust funds and employees in employment law class actions and other representative cases as well as single and multi-plaintiff cases. Over the last 25 years, representative cases in which the firm has served as lead class counsel include – but are not limited to – *Alexander v. FedEx Ground Package Systems, Inc.*, U.S. District Court Northern District of California, Case No. 05-cv-38 EMC (challenging independent contractor misclassification); *In re FedEx Ground Package Systems Employment Practices Litigation*, U.S. District Court Northern District of Indiana, Case No. 05-MDL-1700 (MDL nationwide class action challenging independent contractor misclassification); *Estrada v. FedEx Ground Package Systems, Inc.*, Los Angeles Superior Court Case No. BC210130 (resulting in $27 million class judgment paid to 207 California class members misclassified as independent contractors); *Vickery v. Cinema Seven Inc. dba the Mitchell Brothers O'Farrell Theatre*, San Francisco Superior Court Case No. 959610 (expense reimbursement, minimum wage and overtime class action challenging independent contractor misclassification); *LaBrie v. UPS Supply Chain Solutions*, U.S. District Court Northern District of California, Case No. 08-cv-3182 PJH (California statewide class action/nationwide FLSA collective action challenging independent contractor misclassification); *Roberts v. Best Buy*, Contra Costa County Superior Court, Case No. C-02-1642 (California manager misclassification overtime class action); *Gilmer v. AC Transit*, U.S. District Court Northern District of California, Case No. 08-cv-05186 (FLSA collective action).

- 2 -
DECLARATION OF JENNIFER KEATING ISO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND ORDER TO FACILITATE COLLECTIVE ACTION NOTICE
CASE NO. 3:16-CV-01231-WHO

3.     Prior to December 31, 2018, Beth Ross was the lead attorney representing Named Plaintiffs in this case.  Ms. Ross has substantial experience in complex class actions, including in *Alexander v. FedEx Ground Package Systems, Inc.*, *In re FedEx Ground Package Systems Employment Practices Litigation*, *Estrada v. FedEx Ground Package Systems, Inc.*, and *Vickery v. Cinema Seven Inc.*, referenced *supra* at paragraph 2.  Ms. Ross retired from Leonard Carder on December 31, 2018 after more than 25 years with the firm.  Prior to her retirement, Ms. Ross personally participated in all aspects of this litigation, including the mediation that led to the Settlement.

4.     Since Ms. Ross's retirement, I have taken over as lead attorney on this case.  I have more than ten years' experience litigating wage and hour cases, including *LaBrie v. UPS Supply Chain Solutions* referenced *supra* at paragraph 2; *Aguilar v. Carey Limousine LA, Inc.*, JAMS Ref. No. 1100059356 (Hon. Ronald Sabraw (Ret.)) (compelled arbitration of 16 misclassified independent contractors' claims under Labor Code § 2802, resulting in an award of over $2 million); and *Ardon v. 3PD, Inc.*, U.S. District Court Central District of California, Case No. ED CV 13-01758-ODW (DTBx) (individual Labor Code claims and representative PAGA claim against Defendant's predecessor, discussed in more detail *infra* at paragraph 15.

5.     I have personally participated in all aspects of this litigation, including the initial investigation, preparing the complaint, conditional certification of the FLSA claim, discovery, preparing for class certification, preparing the mediation materials (including the damages analysis), attending the mediation and concluding the Settlement Agreement, a true and correct copy of which is attached as **Exhibit 1** hereto.  The parties are in the process of collecting signatures.

6.     The parties have engaged in extensive written and documentary discovery in this matter.  In response to Named Plaintiffs' discovery requests, and after numerous discovery disputes, XPO LM ultimately produced hundreds of thousands of documents.  Named Plaintiffs deposed three XPO LM corporate designees, the Senior Vice President responsible for operations in California, and seven managers responsible for various markets throughout California, with depositions taking place at various locations throughout California and in Atlanta, Georgia.  Named Plaintiffs also attended the deposition of a manager employed by one of XPO LM's retail clients, which was taken

in one of the related cases. My office also conducted extensive interviews with approximately 80 individuals who opted into the collective action for the purpose of collecting information in support of class certification.

7. XPO LM obtained documentary discovery from the Named Plaintiffs as well as 26 collective action opt-ins. Five of the 26 opt-ins initially served with document requests did not respond and had their FLSA claims dismissed. XPO LM selected five additional opt-ins, who had not all completed their document production at the time the parties reached a settlement. XPO LM deposed the Named Plaintiffs as well as several collective action opt-ins and several contractors who did not personally drive for XPO LM and are not part of any putative class in the related cases.

8. The parties attended mediation on October 25, 2018, in San Francisco, and on November 13, 2018, in Toronto, before mediator Michael Dickstein, Esq., a nationally recognized class action wage and hour mediator. The case settled in principle late in the evening of the second day of mediation, after the mediator issued a mediator's proposal. Prior to the mediation, XPO LM provided my office with a large volume of damages data regarding the work performed by the putative Class Members. My office retained an expert to review and analyze the data provided to estimate, *inter alia*, the hours worked and expenses incurred by putative Class members for the purpose of building a damages model. We were preparing to file a motion for class certification on December 14, 2018 if we could not resolve the case.

9. Based on the information provided by XPO LM in advance of mediation, and the damages model developed by the expert retained by my office, our best estimate of the maximum verdict value of the Class' potential recovery of all wages, expenses, interest and penalties, assuming all factual and legal disputes would be resolved in favor and they would obtain the full value of their claimed damages, was approximately $83 million. Thus, the $16.5 million settlement amount represents approximately 20% of our best estimate of the absolute maximum value of the case.

10. Based on the information provided by XPO LM regarding days worked, I estimate that the settlement will result in a payment of approximately $70 for each day worked by the Settlement Class Members, with an additional $2.50 per day to the Collective Action Opt-Ins.

Estimated payments to the Settlement Class Members range from $70 to over $138,700, and average $14,222.82. The additional estimated payments to Collective Action Opt-Ins range from $2.50 to over $4,600, and average $1,530.61.

11.     It is my professional opinion, based on my experience in wage and hour litigation, and based on my own independent investigation and evaluation and consultation with Named Plaintiffs and with my law partners and colleagues, that the proposed settlement fairly addresses all of the allegations of Defendant's violations of the Labor Code and the FLSA and provides adequate monetary relief to Named Plaintiffs and the Class Members. I have assessed the risks and inherent delays if we were to continue with the litigation and believe that the Settlement is fair, reasonable, and adequate in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and uncertainties regarding class certification, liability, and the amount of damages that might be recovered.

12.     After the Settlement was reached, I contacted Settlement Services, Inc. ("SSI"), KCC and Simpluris to obtain cost estimates for administering the Settlement. SSI provided the lowest estimate. SSI acted as the administrator of the FLSA collective action notice procedure in this case after conditional certification was granted in October 2016. My office is also currently using SSI as the settlement administrator in a class action settlement against Bank of America on behalf of California mortgage loan officers, *McLeod v. Bank of America*, U.S. District Court Northern District of California, Case No. 3:16-cv-03294-EMC.

13.     The proposed *cy pres* recipient, Legal Aid at Work, is a non-profit organization providing free legal employment services to low wage workers. Through its Wage Protection program, Legal Aid at Work helps low-wage workers, such as the Class Members in this case, with claims of violations including minimum wage, overtime, meal and rest period, unlawful deductions, and unreimbursed business expenses. Leonard Carder has co-counseled with Legal Aid at Work on two wage and hour cases in recent years. One of the partners at Leonard Carder is on the Legal Aid at Work Board of Directors and several Leonard Carder attorneys volunteer at workers' rights clinics operated by Legal Aid at Work.

- 5 -

DECLARATION OF JENNIFER KEATING ISO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION
AND ORDER TO FACILITATE COLLECTIVE ACTION NOTICE
CASE NO. 3:16-CV-01231-WHO

14. I have reviewed Leonard Carder's billing records in this case and, as of February 28, 2019, our lodestar amount is approximately $2,599,442.07, which is comprised of a total of 3,889.4 attorney hours billed at conservative market hourly rates from $440 to $860, 829.9 paralegal/law clerk hours at $225 per hour, and costs in the amount of $125,565.57.

15. I personally participated in prior litigation against XPO LM predecessor 3PD, Inc., *Ardon v. 3PD, Inc.*, U.S. District Court Central District of California, Case No. ED CV 13-01758-ODW (DTBx), in which we asserted Labor Code claims similar to those being asserted here on behalf of seven individuals as well as a representative claim for civil penalties and underpaid wages pursuant to the California Private Attorney General Act ("PAGA") set forth in California Labor Code § 2698 *et seq.* The *Ardon* case resulted in a confidential settlement on behalf of the seven individual plaintiffs and the following distribution to the similarly situated aggrieved employees:

- Total settlement fund: $1,000,000 (of which $45,000 was paid to the State of California and $955,000 was paid to the employees);
- Total number of class members: 211;
- Total number of class members to whom notice was sent: notice was sent to all 211 similarly situated aggrieved employees, and 13 notice packets were ultimately undeliverable;
- Method of notice: first class mail;
- Claim forms submitted: 149 (71% of the total class);
- Average recovery: $6,409.40 per similarly situated aggrieved employee;
- Administrative costs: Defendant deposited $25,000 into the fund for settlement administration, and any remainder reverted to Defendant, the administrative costs did not come out of the $1,000,000 settlement fund;
- Attorneys' fees and costs: $500,000.

The *Ardon* PAGA settlement covered the time period between September 26, 2012 and February 26, 2015, and involved a limited release for civil penalties under Labor Code §§ 558 and 2698 *et seq.* A number of Settlement Class Members in the instant case also participated in the *Ardon* PAGA settlement.

- 6 -

DECLARATION OF JENNIFER KEATING ISO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND ORDER TO FACILITATE COLLECTIVE ACTION NOTICE
CASE NO. 3:16-CV-01231-WHO

16. I have been advised by counsel for Defendant that Defendant XPO LM will, no later than 10 days after the proposed Settlement Agreement and Release of claims is filed in this Court, serve upon the appropriate State Officials of each state in which a class member resides, as well as the appropriate Federal official, a notice of the proposed settlement that comports with 28 U.S.C. § 1715(b). Based on the addresses currently known to defendant, notices will be sent to the appropriate officials in approximately 38 states.

I declare under penalty of perjury under the laws of the State of California and under the laws of the United States that the foregoing is true and correct.

Executed this 18th day of April, 2019 in Oakland, California.

*/s/ Jennifer Keating*
Jennifer Keating

# EXHIBIT 1

# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is entered into by plaintiffs, RONNEL CARTER, the estate of JUAN ESTRADA, the estate of JERRY GREEN, BURL MALMGREN, BILL McDONALD, and JOEL MORALES individually and on behalf of the Settlement Class, as defined below, and defendant, XPO LAST MILE, INC. This Agreement is subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and is made for the sole purpose of attempting to consummate settlement of this Action on a classwide basis subject to the following terms and conditions. As detailed below, in the event the Court does not enter an order granting final approval of the Settlement for any reason, this Agreement shall be void and shall be of no force or effect.

## I. DEFINITIONS

1. "Action" shall mean the civil action filed on March 11, 2016, by Ron Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales against Defendant XPO LM in the United States District Court for the Northern District of California under Case No. 3:16-cv-01231-WHO.

2. "Carrier" shall mean any person who (a) entered into a Delivery Service Agreement either in his or her individual capacity or through a business entity with XPO LM or 3PD, and (b) according to XPO LM's records was a driver who performed delivery services pursuant to that Delivery Service Agreement, and (c) performed a portion of those delivery services within the state of California during the Class Period.

3. "Class Counsel" shall mean Leonard Carder, LLP (Jennifer Keating and Amy Endo) 1330 Broadway, Suite 1450, Oakland, CA 94612.

4. "Class Counsel Fees and Expenses" shall mean Class Counsel's attorney fees and expenses as set forth in Section III(6).

5. "Class Notice" shall mean the Notice of Proposed Class Action Settlement, as set forth in the form of Exhibit A attached hereto, or as otherwise approved by the Court, which is to be mailed to Settlement Class Members.

6. "Class Representatives" shall mean Plaintiffs Ron Carter, the estate of Juan Estrada, the estate of Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales.

7. "Class Period" shall mean the period of time from March 12, 2012, through the earlier of the one hundredth day after mediation date of November 13, 2018 (February 21, 2019) or the date the Court grants preliminary approval of the settlement and authorizes distribution of the Class Notice.

8. "Collective Action Opt-Ins" shall mean each and every Settlement Class Member who timely and validly provided their consent to become a party plaintiff pursuant to the Court's Order Granting Conditional Certification (Dkt. No. 61) and Order Approving Form of Notice (Dkt. No. 66), unless their federal claims were subsequently dismissed with prejudice for failure to respond to discovery.

9.     "Complaint" and "Operative Complaint" shall mean the First Amended Complaint filed in the United States District Court for the Northern District of California on June 9, 2016, in this Action.

10.     "Contract Day" shall mean each day during the Class Period that the Carrier is identified as having provided delivery services for XPO LM in the State of California pursuant to the Carrier's Delivery Service Agreement.

11.     "Court" shall mean the United States District Court for the Northern District of California.

12.      "*Cy Pres* Amount" shall mean the aggregate amount of the checks distributed to Settlement Class Members that are not cashed within the time established in Section VI(10).

13.     "Defendant" shall mean XPO Last Mile, Inc.

14.     "Defendant Releasees" shall mean Defendant, Defense Counsel, and Defendant's present and former parent companies, subsidiaries, divisions, related or affiliated companies, successors, predecessors, related companies, and joint ventures, and each of their present and former owners, shareholders, officers, directors, employees, consultants, agents, attorneys, insurers, accountants, auditors, advisors, representatives, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors and assigns, any individual or entity which could be jointly liable on behalf of the forgoing, and all other persons acting under the supervision, direction, control or on behalf of any of the foregoing.

15.     "Defense Counsel" shall mean Jackson Lewis, P.C. (Fraser A. McAlpine and Adam L. Lounsbury, *pro hac vice*) 500 California Street, 9th Floor, San Francisco, CA 94111.

16.     "Delivery Service Agreement" shall mean the agreement (a) entered into between XPO LM or 3PD, and a Carrier, either in his or her individual capacity or through a business entity, and (b) typically entitled Delivery Service Agreement in which the contractual terms regarding the Carrier's provision of delivery services were memorialized.

17.     "Effective Date" shall be the date when all of the following events have occurred: (a) this Agreement has been executed by all Parties and by Class Counsel and Defense Counsel; (b) the Court preliminary approves this Agreement; (c) Class Notice has been given as provided in this Agreement; (d) the Court has held a final approval hearing and entered a final order and judgment certifying the Settlement Class and approving this Settlement; and (e) the later of the following events: the expiration of the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or the dismissal of any appeal, writ, or other appellate proceeding opposing the Settlement with no right to pursue further remedies or relief; or any appeal, writ, or the issuance of such other final appellate order upholding the Court's final order with no right to pursue further remedies or relief.

18.     "Final Approval Date" shall mean the date upon which the Court enters an order finally approving the fairness, reasonableness and adequacy of the Settlement.

19.     "Individual Settlement Amount" shall mean the amount which is ultimately distributed to each Settlement Class Member pursuant to the distribution formula established by Section VI.

20.     "LWDA" shall mean the state of California Labor & Workforce Development Agency.

21.     "LWDA Payment" shall mean the funds allocated from the PAGA Payment to be paid to the LWDA.

22.     "Net Settlement Amount" shall mean the Settlement Fund less amounts allocated to resolve the overtime claims of the conditionally certified FLSA class, Class Counsel Fees and Expenses, the LWDA Payment, Settlement Administrator Fees, and Service Awards.  The Net Settlement Amount shall be available for paying Individual Settlement Amounts to Settlement Class Members.

23.     "Opt-Outs" shall mean any and all persons who timely and validly request exclusion from the Settlement Class in accordance with the terms of the Class Notice or as otherwise approved by the Court.

24.     "Opt-Out Request" shall mean a timely and valid request for exclusion from the Settlement Class in accordance with the terms of the Class Notice or as otherwise approved by the Court.

25.     "PAGA Payment" shall mean the funds allocated from the Settlement Class Fund for the settlement and full release of any and all claims for civil penalties that could have been made in this Action by the Settlement Class Members under the Private Attorneys' General Act.

26.     "Parties" shall mean the Class Representatives and Defendant.

27.     "Preliminary Approval Date" shall mean the date upon which the Court enters an order preliminarily approving this Settlement.

28.     "Released Claims" shall mean the Release of Claims by Settlement Class Members and Release by Collective Action Opt-Ins, and Release of Claims by Class Representatives as described in Section IV (1)-(3) herein.

29.     "Service Award" shall mean any additional monetary payment provided to the Class Representatives for their efforts and risks taken on behalf of the Settlement Class in this Action as set forth below.

30.     "Settlement" shall mean the settlement between the Parties, which is memorialized in this Settlement Agreement and Release of Claims, including any attached exhibits.

31.     "Settlement Administrator" shall mean the administrator that the parties select to provide Class Notice to the Settlement Class and to otherwise administer the settlement according to this Agreement following receipt of bids from the following settlement administration firms: Settlement Services, Inc. (SSI), Simpluris, Inc. and KCC.

32. "Settlement Class" shall mean the Class Representatives and Carriers as defined herein. If any member of the Settlement Class provided delivery services in the name of a business entity, the business entity shall be considered one and the same as the individual person for all purposes of this Settlement. Consistent with the Order Defining the Respective Classes (Dkt. No. 101), the Settlement Class does not include individuals who provided delivery services for a Carrier, and did not enter into a Delivery Service Agreement. Membership in the Settlement Class is limited to the Contract Days during the Class Period.

33. "Settlement Class Member" shall mean any person who is a member of the Settlement Class or if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor-in-interest.

34. "Settlement Fund" shall mean the gross amount of $16,500,000.00 (sixteen million five hundred thousand and 00/100 dollars), which will be established as described below, and which represents full payment for the Released Claims, including the PAGA Payment, LWDA Payment, Class Counsel Fees and Expenses, Service Awards, aggregate Individual Settlement Amounts, and any *Cy Pres* Amount. The Defendant's share of any applicable payroll taxes will be paid to the Settlement Administrator separate and apart from the Settlement Fund, and the Settlement Administrator will remit such taxes to the appropriate authorities on behalf of the Settlement Fund.

35. "Settlement Class Member Information" shall mean, for each Settlement Class Member: (1) his or her name; (2) last known home address; (3) dates of service; (4) telephone number, if available; and (5) email address, if available.

36. "XPO LM" shall mean Defendant XPO Last Mile, Inc.

## II. BACKGROUND

1. **Procedural History.** Plaintiffs commenced this lawsuit on March 11, 2016, by filing a complaint in United States District Court for the Northern District of California. Plaintiffs allege that Defendant violated various California and federal wage and hour laws. Plaintiffs subsequently amended their complaint on June 9, 2016 (First Amended Complaint, Dkt. No. 33), which Defendant Answered on June 24, 2016.

On August 10, 2016, Plaintiffs moved to conditionally certify a class of Carriers and facilitate collective action notice (Dkt. No. 49). Defendant opposed the motion for conditional certification on August 31, 2016, and Plaintiffs submitted their reply in further support of the motion on September 14, 2016. The Court granted conditional certification on September 28, 2016, followed by an order filed on October 3, 2016 (Dkt. Nos. 60, 61). Notice of conditional certification was issued and approximately one hundred and fifteen (115) consents were received from the Opt-Ins (Dkt. No. 139).

Thereafter, this Action was related to two others (Dkt. No. 83), and the parties involved in all three cases stipulated to, and the Court issued, an Order Defining the Respective Classes in the three related cases (Dkt. No. 101). Thereafter the parties engaged in extensive discovery described below.

The Parties attended mediation of this Action on October 25, 2018, in San Francisco, and on November 13, 2018, in Toronto, before mediator Michael Dickstein, Esq., a nationally recognized class action wage and hour mediator. The case settled in principle during the second day of mediation.

2. **Class Representatives' Claims.** The Action alleges Defendant misclassified the Settlement Class Members as independent contractors and asserts claims for alleged violations of the Fair Labor Standards Act, California's Wage Laws, California's Labor Code, California's Unfair Business Practices Act and sought penalties pursuant to California's Private Attorneys General Act. Specifically, the Class Representatives assert the following claims:

   a. failure to pay FLSA overtime (29 U.S.C. §§201 *et seq.*);

   b. failure to pay FLSA minimum wage (29 U.S.C. §206);

   c. failure to pay California minimum wage (Labor Code §§1182.11, 1194; IWC Wage Order 9);

   d. failure to pay California overtime (Labor Code §§510, 1194; IWC Wage Order 9);

   e. reimbursement of employment expenses (Labor Code § 2802);

   f. unlawful deductions from wages (Labor Code §§221, 223, Wage Order 9);

   g. failure to provide meal periods (Labor Code §§226.7, 512, Wage Order 9);

   h. failure to authorize and permit rest periods (Labor Code §§226.7, Wage Order 9);

   i. failure to furnish accurate wage statements (Labor Code §§226, 226.3, Wage Order 9);

   j. waiting time penalties (Labor Code §§201-203);

   k. violations of California's Unfair Competition Law (Bus. & Professions Code §§ 17200, *et seq.*);

   l. civil penalties under the Private Attorneys General Act (Labor Code §§ 2698, *et seq.*).

The Class Representatives believe that they have meritorious claims based on these alleged violations of California and federal law, and that class certification is appropriate because the requisites for class certification can be satisfied. Defendant has denied and continues to deny any liability to the Class Representatives and the Settlement Class and has raised various defenses to the claims.

3. **Discovery, Investigation, and Research.** Class Counsel conducted an investigation into the facts during the prosecution of the Action. This discovery and investigation has included, among other things (a) multiple meetings and conferences with the Class

Representatives; (b) inspection and analysis of documents produced by the Class Representatives and Defendant; (c) deposing eleven of Defendant's managers, defending the depositions of all Class Representatives and six putative class members, and attending the depositions of four third parties, (d) analysis of the legal positions taken by Defendant; (e) investigation into the viability of class treatment of the claims asserted; (f) extensive analysis of class-wide damages, including the analysis of millions of lines of data related to the delivery activities of the Carriers throughout the class period in the state of California; (g) research of the applicable law with respect to the claims and potential defenses thereto; (h) serving and responding to discovery requests; (i) conducting wide-ranging electronic discovery which resulted in the production and review of hundreds of thousands of documents and reports; and (j) participating in two full-day mediation sessions.

The Class Representatives have vigorously prosecuted this case, and Defendant has vigorously contested it.  The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims and of Defendant's defenses available to them.

4.    **Allegations of the Class Representatives and Benefit of Settlement.**  The factual investigation, discovery, and litigation conducted in this matter, which included extensive preparation for mediation, as well as discussions between Class Counsel and Defense Counsel have been adequate to give the Class Representatives and Class Counsel a sound understanding of the merits of their positions and to evaluate the worth of the Claims of the Settlement Class.  This Agreement was reached after arm's-length bargaining over the course of two days of intensive mediation.  The discovery conducted in this Action and the information exchanged by the Parties through settlement discussions and mediation are sufficient to reliably assess the merits of the Parties' respective positions and to compromise the issues on a fair and equitable basis.

The Class Representatives and Class Counsel believe that the allegations and contentions asserted in the Action have merit.  However, the Class Representatives and Class Counsel recognize and acknowledge the expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant through trial and through appeals. Class Counsel has taken into account the uncertain outcome of the litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and the potential difficulty of demonstrating damages for the class.  Class Counsel is mindful of the potential problems of proof under, and possible defenses to, the Claims alleged in the Action.

Class Counsel believes that this Agreement confers substantial benefits upon the Class Representatives and the Settlement Class Members and that an independent review of this Agreement by the Court in the approval process will confirm this conclusion.  Based on their own independent investigation and evaluation, Class Counsel has determined that the Agreement is in the best interests of the Class Representatives and the Settlement Class Members.

5.    **Defendant's Denial of Wrongdoing and Liability.**  Defendant has denied and continues to deny each and all of the claims and contentions alleged by the Class Representatives in the Action.  Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action. Defendant contends that it complied in good faith with California laws, properly classified the Class Representatives and Settlement Class Members under applicable state and federal law,

and has dealt legally and fairly with Class Representatives and Settlement Class Members. Defendant further denies that, for any purpose other than settling this Action, these claims are appropriate for class or representative treatment.  Nonetheless, Defendant has concluded that further proceedings in the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to dispose of burdensome and protracted litigation and to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action.  Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action.  Defendant has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

6.    **Intent of Agreement.**  The Agreement set forth herein intends to achieve the following: (1) entry of an order preliminarily and finally approving the Agreement; (2) entry of judgment and dismissal with prejudice of the Action; and (3) discharge of Defendant Releasees from liability for any and all of the Released Claims.

## III.    SETTLEMENT CONSIDERATION

1.    **Settlement Fund.**  The Settlement Fund shall not exceed or be less than the aggregate sum of $16,500,000.00 (sixteen million five hundred thousand and 00/100 dollars).  The Settlement Fund shall constitute adequate consideration for the Agreement and will be made in full and final settlement of: (a) the PAGA Payment, including the LWDA Payment; (b) the Released Claims, (c) the Class Counsel Fees and Expenses; (d) the Service Awards; (e) amounts allocated to resolve the overtime claims of the conditionally certified FLSA class; (e) the aggregate of all Individual Settlement Amounts; (f) the Settlement Administrator Fees and Costs; (g) the *Cy Pres* Amount, if any; and (h) any other obligation of Defendant under this Agreement.  Under no circumstances shall Defendant be required to pay more than the Settlement Fund for any reason whatsoever related to or under this Agreement.  In addition to the Settlement Fund, Defendant shall separately pay to the Settlement Administrator, its share of all applicable payroll taxes on amounts treated as wages.

2.    **Size of the Settlement Class.**  The agreement is entered into expressly based on Defendant's representation that, as of November 13, 2018, the number of unique Carriers operating during the Class Period is approximately 847.

3.    **Service Awards for the Class Representatives.**  The Class Representatives may petition the Court to approve a Service Award to compensate each of them for their efforts on behalf of the Settlement Class in this Action, including assisting in the investigation, participating in discovery, and consulting with Class Counsel regarding all aspects of the litigation and settlement.

Each Service Award shall not exceed $20,000.00 (twenty thousand and 00/100 dollars) for each of the named plaintiffs, which amounts to $120,000.00 (one hundred and twenty thousand and 00/100 dollars) in the aggregate.  Defendant shall not oppose any request by Class Representatives seeking Service Awards in such amounts.  Any Service Award approved by the Court shall be paid to the Class Representatives from the Settlement Fund and shall be in addition

to any distribution to which they may otherwise be entitled as Settlement Class Members. Such Service Award shall not be considered wages, and the Settlement Administrator shall issue the Class Representatives a Form 1099 reflecting such payment. Each Class Representative shall be responsible for the payment of any and all taxes with respect to his Service Award and shall hold Defendant Releasees harmless from any and all liability with regard thereto.

4. **Payment to Settlement Class Members.** Each Settlement Class member shall be eligible to receive payment of the Individual Settlement Amount, which is a share of the Net Settlement Amount based on the distribution formula set forth in Section VI(7)(b), below.

5. Each Settlement Class Member, including the Class Representatives, shall be responsible for the payment of any and all taxes with respect to his or her Individual Settlement Amount, except for the Defendant's share of any applicable payroll taxes on amounts treated as wages. Defendant shall have no responsibility for deciding the validity of the Individual Settlement Amounts or any other payments made pursuant to this Settlement, shall have no involvement in or responsibility for the determination or payment of taxes and required withholdings, if any, and shall have no liability for any errors made with respect to the calculation of any Individual Settlement Amounts.

Settlement Class Members represent and understand that they shall be solely responsible for any and all tax obligations associated with their respective Individual Settlement Amounts. All Individual Settlement Amounts shall be deemed to be paid to Settlement Class Members solely in the year in which such payments are actually received by the Settlement Class Members. It is the intent of this Agreement that the Individual Settlement Amounts are the sole payments to be made to the Settlement Class Members, and that the Settlement Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Amount.

6. **Class Counsel Fees and Expenses.** As part of the motion for final approval of the Settlement, Class Counsel may submit an application for an award of Class Counsel Fees and Expenses not to exceed 30% of the Settlement Fund (or $4,950,000.00 (four million nine hundred fifty and 00/100 dollars)). Defendant agrees not to object to any such fee, cost or expense application in this amount. As a condition of this Agreement, Class Counsel has agreed to pursue fees and expenses in a manner consistent with this Section. Any Class Counsel Fees and Expenses awarded by the Court shall be paid from the Settlement Class Fund and shall not constitute payment to any Settlement Class Members. If Class Counsel fees are reduced by the Court and Class Counsel Fees and Expenses is less than set forth above, the amount of the reduction ordered by the Court will be added to the Settlement Fund and shall not revert to XPO LM.

The Class Counsel Fees and Expenses approved by the Court shall encompass: (a) all work performed and costs and expenses incurred by, or at the direction of, any attorney purporting to represent the Settlement Class related to this Action; (b) all work to be performed and costs to be incurred in connection with approval of the Agreement; and (c) all work to be performed and costs and expenses, if any, incurred by Class Counsel in connection with administering the Settlement through the Effective Date.

7.      **PAGA Payment.**  A portion of the Settlement Fund shall be allocated for the settlement and release of any and all claims for civil penalties that could have been made under the California Private Attorneys General Act of 2004, Labor Code § 2698, *et seq*. by the Settlement Class Members in this Action.    The parties agree that $24,000.00 (twenty four thousand and 00/100 dollars) shall be allocated to this portion of the release.  Seventy five percent (75%) of the PAGA Payment will be paid to the LWDA and the remaining twenty five percent (25%) will be distributed to the Settlement Class members as part of the Net Settlement Amount described in Section VI(7)(a), below.  This division, and distribution to the LWDA is made pursuant to California Labor Code § 2699.  The parties acknowledge that that the Agreement must be approved by the Court and Defendant will provide a copy of the Agreement to the LWDA at the time the Agreement is submitted to the Court for Approval.

8.      **Settlement Administrator Fees and Costs.**  The parties agree to designate either SSI, Simpluris or KCC as the Settlement Administrator, based on an evaluation of the bids received from them. From the Settlement Class Fund, the fees and costs payable to the Settlement Administrator to effectuate the administration of the settlement are not to exceed $50,000.00.  If, and to the extent that, the fees charged by the Settlement Administrator are less than $50,000.00, the balance will be added to the Net Settlement Fund and shall not revert to XPO LM.

## IV.   RELEASES AND WAIVERS

1.      **Release of Claims by Settlement Class Members.**  Upon the Effective Date, all Settlement Class Members shall fully, finally, irrevocably, unconditionally, and forever release, and discharge XPO LM and Defendant Releasees or any of them, from all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, which:  (i) are owned or held by Settlement Class Members and/or by their affiliated business entities (if any), or any of them, as against Defendant Releasees, or any of them; and (ii) which were asserted in Plaintiffs' Operative Complaint or, whether or not asserted, which could have been asserted in this Action arising out of the factual allegations set forth in the Operative Complaint and that are related to, or arise from, the employment classification of the Settlement Class at law or in equity by XPO LM during the Class Period under the statutory or common law of California and/or any local law, statute, ordinance or regulation within the State of California.

The Released Claims include, without limitation, all rights and claims under California wage payment laws and wage and hour related claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever for wages, benefits, taxes, compensation, damages, costs, penalties, liquidated damages, treble damages, punitive damages, interest, attorney fees, litigation costs, restitution, equitable relief, or other relief, and any claims of alleged unjust and/or improper (1) classification as an independent contractor and/or non-employee exempt from state minimum wage and/or overtime laws, or any other alleged misclassification under state laws or any alleged misclassification related to other employment-related claims; (2) deductions from compensation and/or wages; (3) failure to pay minimum wages; (4) failure to provide proper pay stubs or other records related to hours worked, wages earned, and/or payroll deductions; (5) failure to pay, indemnify, and/or reimburse for work-related expenses; (6) failure to pay all wages when due; (7) failure to calculate and/or pay overtime compensation; (8) failure to keep and maintain

any records required to be kept or maintained under state wage and hour laws; (9) retaliation; and/or (10) enrichment in any manner of Defendant by any conduct alleged or that could have been alleged in this Action.  This release specifically includes, but is not limited to claims under California Labor Code, California Code of Civil Procedure, California Business & Professions Code, and California's Labor Code Private Attorneys General Act of 2004, and any applicable IWC Wage Order.

       2.      **Release by Collective Action Opt-Ins.**  In addition to the releases given in Section IV(1) above, and upon the Effective Date, those Settlement Class Members who are Collective Action Opt-Ins, shall fully, finally, irrevocably, unconditionally, and forever release, and discharge XPO LM and Defendant Releasees or any of them, from any and all claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever, whether known or unknown, at law or in equity, whether concealed or hidden, under the Fair Labor Standards Act ("FLSA"), which were asserted in Plaintiffs' Operative Complaint or, whether or not asserted, which could have been asserted in this Action arising out of the factual allegations set forth in the Operative Complaint and that are related to, or arise from, the employment classification of the Collective Action Opt-Ins by XPO LM during the Class Period.

       On the back of each Individual Settlement Amount check that is issued to Collective Action Opt-Ins, the following language shall appear that will be an agreement that he/she has been paid in full for any and all FLSA and California State wage and hour claims he/she might have had against Defendant: "By endorsing this check, I am providing opt-in consent to release all FLSA claims covered by the Settlement in addition to the release of all claims covered by the Settlement."

       For those Settlement Class Members who are not members of the conditionally certified FLSA class, whether or not they were issued a notice pursuant to this Court's Order Granting Conditional Certification (Dkt. No. 61) and Order Approving Form of Notice (Dkt. No. 66), the back of each Individual Settlement Amount check shall contain the following language that will be an agreement that he/she has been paid in full for any and all California State wage and hour claims he/she might have had against Defendant, and consent to the release provided in Section IV(1): "By endorsing this check, I provide consent to release all claims covered by the Settlement."

       3.      **Release of Claims by Class Representatives.**  The Class Representatives, on behalf of themselves, and any business entities through which they performed services on behalf of Defendant, and their heirs, executors, administrators, and representatives, shall and does hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which each may now have or may have after the signing of this Agreement, against Defendant arising out of or in any way connected with the work that each performed for XPO LM including, the Released Claims, claims that were asserted or could have been asserted in the Action, and any and all transactions, occurrences, or matters between the parties occurring prior to the Effective Date.  Without limiting the generality of the foregoing, this release shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act, as amended; (b) Title VII of the Civil Rights Act of 1964, as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C. § 1981, as amended; (e) age discrimination claims under the Age Discrimination in Employment Act and the Older Workers

Benefit Protection Act; (f) the Fair Labor Standards Act, as amended; (g) the Equal Pay Act; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act; (j) the Rehabilitation Act of 1973; (k) the Family and Medical Leave Act; (l) the Civil Rights Act of 1966; and (m) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws.  This release is for any and all relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs, and the Class Representatives hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all claims for attorney fees and costs arising out of the matters released in this Settlement.

       4.    **Waiver of California Civil Code Section 1542.**  The Class Representatives specifically acknowledge that each is aware of and familiar with the provisions of California Civil Code § 1542, which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

       The Class Representatives, being aware of this section, hereby expressly waive and relinquish all rights and benefits they may have under this section as well as any other statutes or common law principles of a similar effect.   The Class Representatives may hereafter discover facts in addition to or different from those which are now known or believed to be true, but stipulate and agree that, upon the Effective Date, they shall and hereby fully, finally and forever settle and release any and all claims against Defendant, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity and without regard to the subsequent discovery or existence of such different or additional facts.

## V.    PROCEDURE FOR COURT APPROVAL AND RELATED NOTICES

       1.    **Preliminary Approval.**  Class Counsel will submit this Agreement to the Court along with an uncontested Motion for Preliminary Approval of the Settlement to which the Parties have mutually agreed, and which shall include the proposed Class Notice to be sent to Settlement Class Members.  Each party shall cooperate to present the Agreement to the Court for preliminary approval in a timely fashion.

       2.    **Certification of Settlement Class.**  Class Counsel will submit to the Court an uncontested motion to preliminarily certify, for settlement purposes only, a Settlement Class of individuals who are each a Carrier, as that term is defined in Section I(2).

3.       **Appointment of Settlement Administrator.**   The parties will request that the Court appoint one of the three bidders (SSI, Simpluris, or KCC) as the Settlement Administrator to perform the following functions in accordance with the terms of this Agreement, the Preliminary Approval Order, and the Final Approval Order:

a.   Provide for the Class Notice in a form substantially the same as the documents attached as **Exhibit A**, to be sent by first class mail and, where possible, email, to all Settlement Class Members identified by Defendant;

b.   Receive and evaluate any Opt-Out Requests from Settlement Class Members;

c.   Provide to Defense Counsel and Class Counsel, 14 days after the first mailing of the Class Notice and then updated every 14 days thereafter, a list of the names and addresses of all Settlement Class Members who have submitted Requests for Exclusion along with copies of the Opt-Out Requests;

d.   Forward any objections to the Settlement it receives to Class Counsel, for filing with the Court;

e.   Mail settlement payments to Settlement Class Members in accordance with Section VI(6)-(9) of this Agreement;

f.   Mail payment(s) for attorneys' fees and costs to Class Counsel, as ordered by the Court in the Final Approval Order, in accordance with Section VI(3) of this Agreement;

g.   Mail the PAGA payment to the LWDA, as ordered by the Court in the Final Approval Order, in accordance with Section VI(4) of this Agreement;

h.   Mail Service Awards to Class Representatives as ordered by the Court in the Final Approval Order, in accordance with Section VI(5) of this Agreement;

i.   Establish, designate and maintain the Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1;

j.   Maintain the assets of the Settlement Fund in a non-interest bearing escrow account segregated from the assets of XPO LM and any person related to XPO LM;

k.   Obtain an employer identification number (EIN) for the Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4);

l.   Prepare and file federal income tax returns for the Settlement Fund, as well as any other tax filings the Settlement Fund must make under federal, state, or local law;

m.   Cooperate with XPO LM to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Settlement Fund as coming into existence as of the earliest possible date;

n. Pay and deposit the federal taxes owed by the Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Settlement Fund;

o. Prepare, file, and issue all necessary tax reporting forms for the Settlement Fund, including IRS Forms W-2 and 1099 regarding the distribution of payments to Settlement Class Members, Class Representatives, and Class Counsel;

p. Provide XPO LM with copies of all tax reporting and filings made for the Settlement Fund, including copies of the checks and IRS Forms W-2 and 1099 issued to Settlement Class Members, Class Representatives and Class Counsel, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities;

q. Pay any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Settlement Fund solely from the assets of the Settlement Fund without any recourse against XPO LM for additional monies;

r. Within 30 days after all Individual Settlement Amounts are paid, provide to XPO LM and Class Counsel a statement of the total number of checks cashed in each distribution round and the total dollar amount paid to each Settlement Class Member (the "Final Accounting");

s. Liquidate any remaining assets of the Settlement Fund after all payments to Settlement Class Members, Class Representatives, and Class Counsel have been made and all tax obligations have been satisfied, and distribute such assets as directed by the Court; and

t. Petition the Court for termination of the Settlement Fund once all of the duties listed above in subsections (a) to (s) have been completed.

4. **Notice to Settlement Class Members.** Within Fourteen (14) days after the Preliminary Approval, Defendant will provide the Settlement Administrator and Class Counsel with the Settlement Class Member Information. Defendant shall be entitled to provide password protected information on electronic media marked "Confidential – Attorney's Eyes Only." Within twenty one (21) days following the Preliminary Approval Date, Claims Administrator will send the Class Notice (in a form approved by the Court) to Settlement Class Members' last-known addresses by first class mail and email, where available. Settlement Administrator will thereafter follow up promptly on undeliverable addresses and attempt to locate the Settlement Class Members' updated addresses through people-finder or an equivalent software program and skip-trace searches through the United States Postal Service. Additionally, Settlement Administrator may call the telephone numbers of Settlement Class Members to attempt to obtain updated addresses, as necessary, and Defendant will cooperate in providing such numbers to the extent such numbers are available to it. In no event, and under no circumstances, shall Settlement Administrator contact any Settlement Class Member regarding, in any way, the prospective

representation or potential representation of any Settlement Class Member relating to any of the Released Claims, except as specifically provided herein.

Further, within one hundred and twenty (120) days after the last Individual Settlement Amount check is mailed to a Settlement Class Member pursuant to the Second Distribution, the Settlement Administrator shall either destroy or return to Defense Counsel all Settlement Class Member Information received from Defendant, along with all information received by Settlement Administrator relating to the Settlement, including information relating to the Class Notice, except as required by law.

5. **Opt-Out/Request for Exclusion.**  Any Settlement Class Member wishing to be excluded from the Settlement must sign and post-mark or fax a written Opt-Out Request to the Settlement Administrator no later than forty five (45) days after the Class Notice is mailed by the Settlement Administrator.  This deadline applies notwithstanding any assertion of non-receipt of the respective notice of class settlement.  The Opt-Out Request must include the following information: (1) the Settlement Class Member's name, address and telephone number; (2) a statement that the individual wishes to be excluded from the Settlement; and (3) a statement that the individual understands that he or she will not be eligible to receive any payment from this Settlement.  Any Settlement Class Member who submits a valid and timely Opt-Out Request shall not be a member of the Settlement Class, shall be barred from participating in this Settlement, shall receive no monetary benefit from this Settlement, and shall not be subject to the releases and waivers in this Agreement including, but not limited to, the releases in Section IV(1)-(3).

6. **Settlement Terms Bind All Class Members Who Do Not Request Exclusion.** Any Settlement Class Member who does not affirmatively make a Request for Exclusion by submitting a timely and valid Request for Exclusion will be bound by all of its terms, including those pertaining to the claims released in Section IV(1)-(3), as well as any Judgment that may be entered by the Court if it grants final approval of this Settlement.  However, Defendant will only obtain a release of FLSA claims for those Collective Action Opt-Ins who cash their settlement checks.

7. **Objections.**  Any Settlement Class Member who wishes to object to the Settlement must file a written objection with the Court and serve copies on Class Counsel within forty five (45) days of the mailing of the notice of class settlement. Class Counsel shall provide a copy to Defense Counsel and inform the Court of any timely filed objection. The Parties shall not solicit nor otherwise encourage, directly or indirectly, any objections to this Settlement.

8. **Final Approval.**  Prior to the final approval hearing, Class Counsel will submit a Motion for Final Approval of the Settlement in a form that the Parties have mutually agreed upon. At the hearing on the Motion for Final Approval of the Settlement, Class Representatives and Defendant shall jointly request the Court enter a final order certifying the Settlement Class for settlement purposes only, approve the Settlement as required by Federal Rule of Civil Procedure 23(e), and enter a final judgment of dismissal with prejudice of the Action consistent with the terms of the Settlement.  Class Counsel and Defense Counsel shall submit to the Court such pleadings and/or evidence as may be required for the Court's determination and approval.

## VI. SETTLEMENT FUNDING AND DISTRIBUTION

1. **Establishing the Settlement Fund.** Within ten (10) days after the Effective Date, Defendant will deposit $16,500,00.00 with the Settlement Administrator to form the Settlement Fund, plus an additional amount sufficient to pay the employer's share of employment and payroll taxes due, if any, on that portion of the Settlement Fund. The Settlement Administrator shall place the Settlement Fund in a segregated, interest bearing trust account until all payments are made to the Class Representatives, Settlement Class Members, Class Counsel, LWDA, and the agreed *cy pres* beneficiary, as required by this Agreement. The Parties agree, and Class Counsel shall warrant, that the funds deposited in this account shall constitute a qualifying, designated settlement fund pursuant to Section 468B of the Internal Revenue Code.

2. **Allocation of the Settlement Fund Amount.** The Settlement Class Members are settling for the Settlement Fund of $16,500,000.00, which will be allocated to pay the (a) Class Counsel Fees and Expenses, (c) LWDA Payment; (b) Service Awards Payments; (c) amounts allocated to resolve the overtime claims of the conditionally certified FLSA class; (d) Individual Settlement Amounts; (e) Settlement Administrator Fees and Costs; and (f) the Cy Pres Award, if any.

3. **Distribution of Class Counsel Fees and Expenses.** Class Counsel shall receive a distribution from the Settlement Fund as follows:

a. Amount of Class Counsel Fees and Expenses. The Settlement Administrator shall issue payment from the Settlement Fund to Class Counsel in an amount approved by the Court, but not to exceed $4,950,000.00 (four million nine hundred fifty thousand and 00/100 dollars).

b. Time For Payment of Class Counsel Fees and Expenses. The Settlement Administrator shall issue payment of the Court-approved amount of Class Counsel Fees and Expenses within seven (7) days following the establishment of the Settlement Fund.

4. **Distribution of LWDA Payment.** The California Labor & Workforce Development Agency shall receive a distribution from the Settlement Fund as follows:

a. Amount of LWDA Payment. The Settlement Administrator shall issue payment from the Settlement Fund to the LWDA in the amount of $18,000.00 (eighteen thousand and 00/100 dollars), as approved by the Court. This amount is calculated based on California Labor Code § 2699, which requires that seventy five percent (75%) of the PAGA Payment must be paid directly to the LWDA.

b. Time For Payment of LWDA Payment. The Settlement Administrator shall issue payment of the Court-approved LWDA Payment within seven (7) days following the establishment of the Settlement Fund.

5. **Distribution of Service Awards.** The Class Representatives shall receive a distribution from the Settlement Fund as follows:

a. Amount of Service Awards to Class Representative. The Settlement Administrator shall issue payment from the Settlement Fund to each of the Class Representatives a Service Award in an amount approved by the Court, but not to exceed $20,000.00 (twenty thousand and 00/100 dollars).

b. Time For Payment of Service Awards. The Settlement Administrator shall issue payment of the Court-approved amount within ten (10) days following the establishment of the Settlement Fund.

6. **Distribution of $150,000 Allocation to Resolve FLSA Claims of Opt-In Class Members.** Collective Action Opt-Ins will each receive a pro rata share of $150,000 allocated from the Net Settlement Fund in consideration of the release of their FLSA claims, such payments to be calculated based on the number of Contract Days attributed to each Collective Action Opt-In in XPO LM's records during the Class Period relative to the total number of Contract Days attributed to all Collective Action Opt-Ins in XPO LM's records. Fifty (50) percent of the amount allocated to a Settlement Class Member to resolve the FLSA claim will be reported on an IRS Form W-2, and fifty (50) percent shall be reported on an IRS Form 1099.

7. **Distribution of Individual Settlement Amounts.** The Settlement Class members shall receive a distribution from the remaining Settlement Fund as follows:

a. Net Settlement Amount. The Net Settlement Fund shall be allocated to Settlement Class Members based on their California-based delivery services performed pursuant to the Delivery Service Agreement at any time during the Class Period. One hundred percent (100%) of the Net Settlement Amount will be distributed to these Settlement Class Members in an amount determined by the Settlement Administrator's calculation of the Individual Settlement Amount due to each Settlement Class Member.

b. Calculation of Individual Settlement Amounts. Each Settlement Class Member's pro rata share of the Net Settlement Amount will be calculated based on the number of Contract Days attributed to each Settlement Class Member relative to the total number of Contract Days attributed to all Settlement Class Members in XPO LM's records.

c. Amount of Individual Settlement Amounts. The Settlement Administrator Shall issue payment from the Settlement Fund to each of the Settlement Class Members in the amount of each Settlement Class Members' pro rata share of the Net Settlement Amount, less amounts deducted for tax withholdings, as calculated by the Settlement Administrator. Fifteen (15) percent of the amount allocated to a Settlement Class Member pursuant to this section shall be reported on an IRS Form W-2, and eighty five (85) percent shall be reported on an IRS Form 1099.

d. Time for Payment of Individual Settlement Amounts. The Settlement Administrator shall mail, by first-class U.S. mail, a check for the Individual Settlement Amount to each Settlement Class Member's last known address, no later than 10 (ten) days following establishment of the Settlement Fund. In the event

that a Settlement Class Member is deceased, payment hall be made payable to the estate of that Settlement Class Member and delivered to the Settlement Class Member's successor in interest as defined by Code Civ. Proc. § 377.11.

8. **Un-Cashed Settlement Checks**. Each Settlement Class Member must cash his or her Individual Settlement Amount check within 90 days after it is mailed to him or her. If a check is returned to the Settlement Administrator, Settlement Administrator will make all reasonable efforts to re-mail it to the Settlement Class Member at his or her correct address. If any Settlement Class Member's Individual Settlement Amount check is not cashed within 90 days after it is mailed or re-mailed, whichever is later, the Settlement Administrator will send the Settlement Class Member a letter informing him or her that, unless the check is cashed within 30 days of the date of the letter, it will expire and become non-negotiable, and offering to replace the check if it was lost or misplaced, but not cashed. If the check remains uncashed at the expiration of the 30-day period after this notice, the Settlement Administrator will void the check. In such event, the Settlement Class Member will nevertheless remain bound by the Settlement, including the release of the Released Claims.

9. **Second Distribution.** Within 150 days after the Settlement Administrator mails the Individual Settlement Amount checks, the Settlement Administrator shall distribute the amount of any uncashed checks or remaining funds to those Settlement Class Members who cashed their Individual Settlement Amount checks. The amount of uncashed checks or remaining funds shall be allocated according to the method used for Calculation of the Individual Settlement Amounts. The Settlement Administrator shall inform each of the Settlement Class Members receiving a second distribution that the check for any second distribution shall be cashed within 30 days or become void.

10. ***Cy Pres* Amount.** Within 180 days after the Claims Administrator mails the Individual Settlement Amount checks, the Claims Administrator shall distribute any uncashed checks or remaining funds on a *cy pres* basis to Legal Aid At Work (180 Montgomery St #600, San Francisco, CA 94104 – legalaidatwork.org).

11. **Non-Reversionary Settlement.** The entirety of the Settlement Class Fund will be utilized to pay Settlement Class Members, the Class Representatives, Class Counsel Fees and Expenses, the LWDA Payment, Settlement Administrator Fees and Costs or the *cy pres* beneficiary according to the terms of this Settlement. The Parties agree that no amount of the Settlement Fund will revert back to Defendant once paid pursuant to this Settlement.

12. **Taxes.** The Settlement Fund is a common fund that will be administered as a Qualified Settlement Fund for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and the "administrator" of the Settlement Fund, within the meaning of Treas. Reg. § 1.468B-2(k), shall comply with all applicable requirements, which shall include, without limitation, (a) preparing a "Regulation Section 1.468B-3 Statement" pursuant to Treas. Reg. § 1.468B-3(e) on behalf of Plaintiffs and Defendant and providing copies to Counsel for Plaintiff and Defendant for review and approval (which approval shall not be unreasonably withheld); and (b) preparing and timely filing on behalf of the Settlement Fund (i) such income tax and other returns and statements as are required to comply with Treas. Reg. § 1.468B-2 and the other applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and (ii) all necessary state or local tax

returns.  In the event that any amounts to be distributed to the Settlement Class remain unpaid, that amount will be redistributed to the Settlement Class or to the Cy Pres beneficiary.

13. **Disclaimer of Liability.**  XPO LM shall have no responsibility for deciding the validity of the Individual Settlement Amounts or any other payments made pursuant to this Settlement, and shall not be liable under any circumstances for any errors in the administration of this Settlement, shall have no involvement in or responsibility for the determination or payment of taxes and required withholdings, if any, and shall have no liability for any errors made with respect to the calculation of any Individual Settlement Amount.  Settlement Class Members represent and understand that they shall be solely responsible for any and all tax obligations associated with their respective Individual Settlement Amounts.  All Individual Settlement Amounts shall be deemed to be paid to Settlement Class Members solely in the year in which such payments are actually received by the Settlement Class Members.

## VII.   NULLIFICATION OF SETTLEMENT

1. **Non-Approval of the Settlement.**  If (a) the Court does not, for any reason, approve this Agreement in the form agreed to by the Parties, or (b) the Court does not, for any reason, enter a judgment and dismissal with prejudice of the Action, or (c) the approval of the Settlement, judgment, or dismissal is reversed, modified or declared or rendered void, then the Agreement and conditional class certification shall be considered void, and neither the Agreement, conditional class certification, nor any of the related negotiations or proceedings, shall be of any force or effect, and all parties to the Agreement shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court.  Notwithstanding the foregoing, the Parties may attempt in good faith to cure any perceived defects in the Agreement to facilitate Court approval.

2. **Invalidation.**  Invalidation of any material portion of the Settlement shall invalidate the Settlement in its entirety, unless the Parties shall subsequently agree in writing that the remaining provisions of the Settlement are to remain in full force and effect.

3. **Stay Upon Appeal.**  In the event of a timely appeal from the approval of the Settlement, judgment and dismissal, the judgment shall be stayed, and Defendant shall not be obligated to fund the Settlement Class Fund or take any other actions required by this Settlement until all appeal rights have been exhausted by operation of law.

## VIII.   CONFIDENTIALITY

1. **Confidentiality of Settlement Class Member Information.**  Class Counsel agrees (i) to hold the Settlement Class Member Information in strictest confidence; (ii) not to disclose or divulge the Settlement Class Member Information to any Settlement Class Member, including the Class Representatives, or to any third party except as otherwise required in this Agreement; and (iii) to use the Settlement Class Member Information exclusively for or to assist in administration of this Settlement and for no other purpose, including, but not limited to, fact-gathering, discovery, or communication with Settlement Class Members for any purpose other than administration of this Settlement.

## IX. DUTIES OF THE PARTIES

1. **Mutual Full Cooperation.** The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Agreement. Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other actions as may reasonably be necessary to fulfill the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by court order or otherwise, to effectuate this Settlement and the terms set forth herein. As soon as practicable after execution of this Agreement, Class Counsel, with the cooperation of Defendant and Defense Counsel, shall take all necessary and reasonable steps to secure the Court's final approval of this Agreement.

2. **Duty to Support and Defend the Settlement.** The Parties agree to abide by all of the terms of the Settlement in good faith and to support the Settlement fully and to use their best efforts to defend this Settlement from any legal challenge, whether by appeal or collateral attack.

3. **Duties Prior to Court Approval.** Class Counsel shall promptly submit this Agreement to the Court for preliminary approval and determination by the Court as to its fairness, adequacy, and reasonableness. Promptly upon execution of this Agreement, Class Counsel shall apply to the Court for the entry of a preliminary order scheduling a hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class Members, approving as to form and content the proposed Class Notice as agreed to by the Parties, and directing the mailing of the Class Notice to Settlement Class Members. Defense Counsel shall not oppose the motion for preliminary approval or join in the motion, provided that after review, it does not oppose any of its terms.

4. **CAFA Notice.** If it has not done so by the date this Agreement is executed, Defendant will promptly issue notice of this Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## X. MISCELLANEOUS

1. **Signatory Authorization to Settle.** The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions of this Agreement, and that the Class Representatives' signatures also bind any business entity through which the Class Representatives provided services for Defendant.

2. **Different Facts.** The Parties hereto, and each of them, acknowledge that, except for matters expressly represented herein, the facts in relation to the dispute and all claims released by the terms of this Agreement may turn out to be other than or different from the facts now known by each Party and/or its counsel, or believed by such Party or counsel to be true, and each Party therefore expressly assumes the risk of the existence of different or presently unknown facts, and agrees that this Agreement shall be in all respects effective and binding despite such difference.

3. **No Prior Assignments.** The Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

4. **Integration Clause.**  This Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior and contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

5. **Construction.**  The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Agreement.

6. **Modification.**  This Agreement may not be changed, altered, or modified, except in a writing signed by the Parties, and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

7. **Non-Admission.**   Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission by any person or party that any person or entity who contracted with, or provided any delivery services for, Defendant is an employee or was improperly classified as an independent contractor, or is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the Defendant Releasees.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.  This Agreement is a settlement document and shall be inadmissible in evidence in any proceeding.  The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this Agreement.

8. **Governing Law.**  This Agreement is entered into in accordance with the laws of the State of California and shall be governed by and interpreted in accordance with those laws, excluding any choice of law provisions.

9. **Captions and Interpretations.**  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

10. **Court Jurisdiction Over Settlement.**  The Parties agree that any dispute regarding the interpretation of the terms of this Agreement shall be resolved by the Court.  The Parties further agree that, upon the Final Approval Date, this Agreement shall be binding and enforceable pursuant to applicable law.

11. **Attorney Fees, Costs and Expenses.**  Except as otherwise specifically provided for herein, each party shall bear his or its own attorney fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other party to this Agreement.

12. **Execution in Counterparts.**  This Agreement may be executed in counterparts with signatures transmitted by facsimile or electronic mail.  When each Party has signed and

delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

IN WITNESS HEREOF, the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

DATED: April _____, 2019

PLAINTIFF RON CARTER

By: ________________________________
Ron Carter

DATED: April _____, 2019

THE ESTATE OF JERRY GREEN

By: ________________________________
Signatory

DATED: April _____, 2019

PLAINTIFF BURL MALMGREN

By: ________________________________
Burl Malmgren

DATED: April _____, 2019

PLAINTIFF BILL MCDONALD

By: ________________________________
Bill McDonald

DATED: April _____, 2019

PLAINTIFF JOEL MORALES

By: ________________________________
Joel Morales

DATED: April _____, 2019

THE ESTATE OF JUAN ESTRADA

By: ________________________________
Signatory

DATED: April 19, 2019

DEFENDANT XPO LAST MILE, INC.

By: ________________________________
Chris Signorello
Senior Vice President, Litigation Counsel

**APPROVED AS TO FORM AND CONTENT**

DATED: April 19, 2019

LEONARD CARDER LLP

By: ______________________________

Jennifer Keating
Amy Endo
Attorneys for Plaintiffs and the Settlement Class

DATED: April _____, 2019

JACKSON LEWIS P.C.

By: ______________________________

Fraser A. McAlpine
Adam L. Lounsbury
Attorneys for Defendant XPO Last Mile, Inc.

**APPROVED AS TO FORM AND CONTENT**

DATED: April _____, 2019

LEONARD CARDER LLP

By: ________________________________
Jennifer Keating
Amy Endo
Attorneys for Plaintiffs and the Settlement Class

DATED: April 19, 2019

JACKSON LEWIS P.C.

By: ________________________________
Fraser A. McAlpine
Adam L. Lounsbury
Attorneys for Defendant XPO Last Mile, Inc.

# EXHIBIT A

**IMPORTANT LEGAL NOTICE – THIS LAWSUIT SETTLEMENT MAY AFFECT YOUR RIGHTS**

**TO: ALL PERSONS WHO SIGNED A DELIVERY SERVICE AGREEMENT WITH XPO LAST MILE, INC. OR 3PD, INC. AND PERFORMED DELIVERY SERVICES IN CALIFORNIA, AT ANY TIME FROM MARCH 12, 2012 TO FEBRUARY 21, 2019**

**PLEASE READ THIS NOTICE CAREFULLY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.**

| **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT** | |
|---|---|
| **DO NOTHING AND RECEIVE A SHARE OF THE SETTLEMENT** | If you do nothing, you will receive a settlement payment and release all claims covered by this Settlement. |
| **EXCLUDE YOURSELF OR "OPT OUT"** | If you "opt out" of the lawsuit, you ***will not*** receive any payment under this settlement. However, you will also not release any of your claims and will be free to pursue any claims you may have against XPO Last Mile, Inc. |
| **OBJECT** | You may write an objection to the Court stating why you do not like the settlement. You may also appear in Court and explain why you do not like the settlement or use an attorney to appear for you. If you object, this does not mean you opt out of the class or that you will not receive your share of the Settlement (in fact, as explained below, if you opt out of the class, you will not be allowed to object to the settlement terms). |

***1. Why did I receive this Notice?***

You are receiving this Notice because records from XPO Last Mile, Inc. ("XPO LM") show that you signed a Delivery Service Agreement and performed delivery services, in California, pursuant to that Delivery Service Agreement at some time between March 12, 2012 and February 21, 2019. XPO LM and the Plaintiffs in this case have entered into a proposed class settlement of legal claims relating to contract carriers in the above-captioned action. This Notice (1) describes the settlement, (2) explains your rights, including how to participate in the settlement, how to object to the settlement, or how to exclude yourself from the Settlement, as well as what happens in each scenario, and (3) provides the calculation of your potential

settlement share. ***This Notice contains important information that may affect your legal rights. Please read it carefully.***

***2. What is my share of the Settlement?***

Your estimated share of the settlement in this case is $________. This estimate is based on [insert] number of days XPO LM's records show you were a driver who performed delivery services in California pursuant to a Delivery Service Agreement, and is subject to change, as detailed below.

***3. What is the case about?***

On March 11, 2016, Plaintiffs Ron Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales (collectively "Plaintiffs") filed a lawsuit in California alleging that XPO LM misclassified them as independent contractors and violated state and federal wage and hour laws by failing to pay overtime and minimum wages, provide meal and rest breaks, reimburse employment expenses and provide accurate wage statements and by taking unlawful deductions from their wages. Plaintiffs seek compensation for those violations, as well as related penalties and interest. That lawsuit is currently pending in front of Judge William H. Orrick in the U.S. District Court, Northern District of California, San Francisco. The case is entitled *Carter et al v. XPO Last Mile, Inc.*, Case No. 3:16-cv-01231-WHO. XPO LM has denied all of these allegations, and the Court has made no determination as to the merits of any of Plaintiffs' claims.

***4. What is a class action?***

A class action is a legal proceeding where one or more persons sue on behalf of other people who have similar claims. In this case, Plaintiffs' California state law claims were brought on behalf of themselves and on behalf of a class of XPO LM Contract Carriers. A class action allows the Court to resolve the claims of all the class members at the same time. At the same time that it authorized this Notice, the Court certified a class of Contract Carriers, for settlement purposes only, and appointed Plaintiffs and their attorneys ("Class Counsel") to represent the class. If the settlement does not receive final approval from the Court, Plaintiffs will be required to prove that the lawsuit should proceed as a class action.

***5. What is a collective action and how is it different from a class action?***

Plaintiffs' lawsuit alleged claims for overtime compensation under both California state law and the Fair Labor Standards Act, which is a federal law. The claims under California state law were brought on behalf of Plaintiffs and others by class action, as described in Paragraph 4 above. The claims under the federal Fair Labor Standards Act were brought on behalf of Plaintiffs and others similarly situated by collective action. Unlike a class action, only people who affirmatively opt-in to participate in the litigation are members of a collective action. On October 3, 2016, the Court conditionally certified the federal overtime claim as a collective

action and notice was sent to people who had personally worked as delivery drivers for XPO LM or 3PD in California pursuant to a Delivery Service Agreement since March 11, 2013 in order to determine the identity of persons who wished to be part of that collective action. Everyone meeting the requirements set out in that Court-authorized notice who submitted a timely consent form to opt-in to the collective action is part of the collective action and is entitled to a pro rata share of the distribution to Collective Action Opt-Ins, as detailed below, in addition to their pro rata share of the distribution to the entire class, unless their federal claims were subsequently dismissed with prejudice for failure to respond to discovery.

### *6. Background of settlement.*

Since the lawsuit was filed, the parties have exchanged hundreds of thousands of documents and deposed more than twenty witnesses. Class Counsel believe that the claims asserted in the lawsuit have merit, but recognize the expense, length and uncertainty of continued litigation. XPO LM denies that the claims have merit, but believes that further litigation would be protracted, expensive, and contrary to its best interests. Thus, the parties engaged in a two-day mediation with an experienced mediator and negotiated the settlement described here. The Court has determined on a preliminary basis that the settlement is fair, reasonable, and adequate and in the best interests of the Class Members, and has ordered that this notice be provided to you.

### *7. What are the terms of the settlement?*

XPO LM has agreed to pay a total amount of $16,500,000, which includes the following: (a) approximately $12,054,500 to the Class Members to be distributed as set forth below ("Net Settlement Amount"); (b) $150,000 to the Collective Action Opt-Ins; (c) approximately $50,000 in settlement administration expenses; (d) $4,125,000 in attorneys' fees and costs to Class Counsel; (e) $102,500 in Plaintiffs' services awards for acting as class representatives; and (f) $18,000 in penalties to the State of California. XPO LM's payment of this settlement in no way admits any wrongdoing and is being paid to settle the claims alleged in the lawsuit.

The Court granted preliminary approval of the settlement on *[date of preliminary approval]* on behalf of the Collective Action Opt-Ins and a class defined as:

> All persons who (a) entered into a Delivery Service Agreement either in his or her individual capacity or through a business entity with XPO LM or 3PD, and (b) according to XPO LM's records was a driver who performed delivery services pursuant to that Delivery Service Agreement, and (c) performed some portion of those delivery services within the state of California, at any time during the Class Period [March 12, 2012 through February 21, 2019].

***8. How will my share of the settlement amount be calculated?***

Each Class Member will receive a share of the Net Settlement Amount calculated based on the number of days between March 12, 2012, and February 21, 2019, that the Class Member is identified as the primary provider of delivery services for XPO LM in the State of California pursuant to their Delivery Service Agreement. The Net Settlement Amount will be divided by the total number of days worked by all Class Members between March 12, 2012, and February 21, 2019, to establish a value for each workday. That daily value will then be multiplied by the number of days worked by each Class Member who participates in the settlement, to determine each Class Member's settlement amount. For tax reporting purposes, 85% of your settlement amount will be reported as miscellaneous income on a 1099-MISC tax form, with no withholding taken; 15% of your settlement amount will be reported on a W-2 tax form as wages, and be subject to withholdings. Class Members should consult with their tax advisors concerning the tax consequences of the payments they receive under the Settlement.

Each Collective Action Opt-In will also receive a share of the $150,000 distribution allocated to resolve their Fair Labor Standards Act claims. The $150,000 distribution will be divided by the total number of days worked by all Collective Action Opt-Ins between March 12, 2012 and February 21, 2019 and then multiplied by the number of days worked by each Collective Action Opt-In during that time. For tax reporting purposes, 50% of your share of this distribution will be reported as miscellaneous income on a 1099-MISC tax form, with no withholding taken, and 50% will be reported on a W-2 tax form as wages, and be subject to withholdings.

***9. When will I receive my settlement payment?***

If the Court grants final approval of the Settlement, it is anticipated that the distribution of individual settlement payments will be made as soon as ten (10) days after final approval. The earliest that this could occur is in _________ 2019.

***10. What are my options under the settlement?***

**(a) Do Nothing and Receive a Share of the Settlement.**

If you choose to do nothing in response to this Notice, you will receive a payment from the Net Settlement Amount and, if you submitted a timely consent form to opt-in to the collective action, a payment from the allocation for Collective Action Opt-Ins. You will be deemed a part of the Class Action, and you will be releasing all claims you may have against XPO LM related to the allegations in the lawsuit. You will not be able to file a lawsuit or maintain any existing lawsuit against XPO LM for any conduct being released as part of this settlement.

**(b) Request to be Excluded From, or "Opt Out" of, the Settlement.**

You may request to be excluded from or "opt out" of, the Settlement. If you request to opt out, you will NOT receive any money, nor will you release your claims. To request to be excluded

from the Settlement, you ***must*** send a letter to the Settlement Administrator at the address below on or before __________, 2019. Your request to opt out must be signed, include your name, current address and telephone number, and state the following, "I wish to opt out of the settlement in the case *Carter et al v. XPO Last Mile, Inc.*, Case No. 3:16-cv-01231-WHO. I do not want to share in the class settlement or be bound by it. I understand that by sending this notice, I will not be eligible to receive a payment from this Settlement." Any opt-out request not postmarked on or before ________, 2019 will be void unless the Court agrees to review the late exclusion.

**(c) Object to the Settlement.**

You can ask the Court to deny approval of this Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object. Even if you object to the Settlement, you will still be a Class Member and will be bound by the Settlement if it is approved.

Any objection to the proposed Settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Carter et al v. XPO Last Mile, Inc.*, Case No. 3:16-cv-01231-WHO), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA, 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before ____________, 2019.

***11. What if the information on my Adjustment Form is incorrect?***

The Adjustment Form enclosed with this Notice sets forth (a) the number of days between March 12, 2012, and February 21, 2019, that you are identified in XPO LM's records as the primary driver who provided delivery services for XPO LM in the State of California pursuant to your Delivery Service Agreement, and (b) an estimate of your settlement share, assuming that the Court finally approves the Settlement, all Class Members participate in the settlement, and the Court approves the amounts sought for the other requested payments discussed in this Notice. Your actual settlement share may end up being different.

If you disagree with the workday information shown on the Adjustment Form, you must contact the Settlement Administrator in writing at the address below, and provide documents to support your position. Any disputes must be post-marked no later than ________, 2019. Disputes post-marked after this date will not be honored. In the event of such a dispute, the Settlement

Administrator will review XPO LM's records and yours to verify the information. After consultation with you, Class Counsel and Defense Counsel, the Settlement Administrator will make a final determination of the number of workdays and that determination will be final, binding on you, and non-appealable.

***12. Who is the settlement administrator?***

The Settlement Administrator is a company hired by the parties to administer the Settlement. The Settlement Administrator's contact information is:

XPO LM Contract Carrier Class Action Administrator
c/o ADMINISTRATOR NAME
ADDRESS
Phone: (___) ___-____

The Settlement Administrator's duties include processing challenges, objections and exclusions, making payments to the Class Members, and getting answers to any questions you may have. The Court has approved payment to the Settlement Administrator for its work, up to a total of $50,000, out of the $16,500,000 total settlement amount.

***13. Who should I call if I have questions about the settlement?***

If you have any questions about the settlement, you should call the lawyers who represent the Plaintiffs and the Class Members:

**LEONARD CARDER, LLP**
Jennifer Keating
1330 Broadway, Suite 1450
Oakland, California 94612
Telephone: (510) 272-0169
Email: jkeating@leonardcarder.com

***14. How will the lawyers and the class representatives be paid?***

Class Counsel, that is the lawyers representing Plaintiffs and the Class Members, will be paid from the $16,500,000 total settlement amount. Class Counsel will request approval from the Court for payment of 25% of the total settlement amount for payment of attorneys' fees and reimbursement of actual litigation costs. These payments are for services provided, and to be provided, to the Class, and to compensate Class Counsel for the risk of bringing this case on a "contingent basis" where they invested time and all litigation costs with the chance of no recovery. These amounts will not exceed $4,125,000 and are subject to Court approval. Class Counsel will also ask the Court to approve individual payment awards to the Plaintiffs for their services as Class Representatives and their willingness to accept the risks of bringing this case. These awards will not exceed $102,500, and are also subject to Court approval. The papers in

support of the request for attorneys' fees and costs and the class representative payments are available for review online through the Settlement Administrator's website at *https://________________________*.

***15. Notice of Hearing on Final Approval and Objections to Class Action Settlement***

**A Final Fairness Hearing will be held before Judge William H. Orrick on ________, 2019, at ____ am/pm** in Courtroom 2 of the U.S. District Court, Northern District of California, located at 450 Golden Gate Ave., 17th Flr, San Francisco, California 94102, to determine whether the proposed Settlement is fair, reasonable, and adequate. You do not need to appear at this hearing unless you wish to object to the Settlement. If you have sent a written objection, you may appear at the hearing at your option, either in person or through an attorney of your choice at your expense. If you plan to appear at the hearing, you should state your intention in either your written objection or submit a separate notice of intent to appear with the Court. The hearing may be continued without further notice. Check the Settlement Administrator's website (*www.__________*) or the Court's Public Access to Court Electronic Records (PACER) system (*https://ecf.cand.uscourts.gov*) to confirm that the date has not been changed.

***16. What is being released as part of the settlement?***

Upon the final approval of the settlement by the Court, each Class Member (other than those who timely request to be excluded from the Settlement) shall be deemed to have fully, finally and forever released XPO LM from any and all California wage and hour claims against XPO LM related to or arising from their classification as an independent contractor that accrued on any day between March 12, 2012, and February 21, 2019, that they were identified as the primary provider of delivery services for XPO LM in the State of California pursuant to their Delivery Service Agreement.

In addition, Collective Action Opt-Ins shall be deemed to have fully, finally and forever released XPO LM from any and all claims against XPO LM under the Fair Labor Standards Act related to or arising from their classification as an independent contractor that accrued on any day between March 12, 2013, and February 21, 2019, that they were identified as the primary provider of delivery services for XPO LM in the State of California pursuant to their Delivery Service Agreement.

***17. Where can I get more information about the settlement?***

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www.____________.com, by contacting Class Counsel (see contact information above in Section 13), by accessing the Court docket in this case through the Court's PACER system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

If you move or change address, please notify the Settlement Administrator of your new address by mail or by telephone (see contact information above in Section 12).  It is your responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of your Settlement Payment.

It is strongly recommended that you keep a copy of any dispute, request for exclusion and/or objection that you submit, and proof of timely mailing and/or faxing, until after the Final Approval hearing.

# ESTIMATED SETTLEMENT SHARE FORM

*CARTER et al. v. XPO LAST MILE, INC.*

Your estimated share of the settlement in this case is $__________. This estimate is based on the number of days between March 12, 2012 and February 21, 2019 that you are identified in XPO LM's delivery records as having provided delivery services for XPO LM in the State of California pursuant to your Delivery Service Agreement, which in your case is ___ workdays.

If you ACCEPT the information used to calculate your estimated share, as set forth below, you do NOT need to do anything to receive your share of the settlement. Only if you believe that any of the information below is INACCURATE should you complete this form and return it to the Claims Administrator:

MAIL, EMAIL OR FAX ANY CHALLENGES OR ADDRESS UPDATES TO:

XPO LAST MILE Contract Carrier Class Action Administrator
c/o NAME OF ADMINISTRATOR
ADDRESS
EMAIL ADDRESS
Phone: (___) ___-____
Fax: (___) ___-____

**Important**:

1. It is strongly recommended that you keep proof of timely mailing, emailing, and/or faxing for your records until receipt of your settlement payment.

2. If you change your mailing address, please send your new mailing address to the Claims Administrator. It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your settlement payment.

***Your Contact Information.***

The Claims Administrator is using the following contact information for you. If any of your contact information is inaccurate, please correct that information and return a copy of this form to the Claims Administrator at the address above.

<<Name>>
_______________________________________

<<Address>>
_______________________________________

<<City>>, <<State> <Zip>>
_______________________________________

(___ ___ ___) ___ ___ ___ -- ___ ___ ___ ___
**Home Telephone Number**

***Challenge Procedure.***

Check the box below ONLY if you wish to challenge the dates listed above. You do NOT have to submit this form if the dates of employment listed above are accurate. All fields must be complete for your challenge to be accepted. **Any challenges must be post-marked by no later than __________, 2019.** Challenges post-marked after this date will not be honored.

☐ I wish to challenge the number of workdays listed above. Below is a written statement of what I believe to be my correct number of days between March 12, 2012 and February 21, 2019 that I worked as the primary driver providing delivery services for XPO LM in the State of California pursuant to my Delivery Service Agreement. My statement is supported by the enclosed information and/or documentary evidence that supports my challenge. I understand that, by submitting this challenge, I authorize the Claims Administrator to review XPO LM's records and determine the validity of my challenge.

Name of Class Member ________________________________ **[preprinted]**

Class Member ID Number (from address label): ________________________________ **[preprinted]**

I believe that I worked ___ days as the primary driver providing delivery services for XPO LM in the State of California pursuant to my Delivery Service Agreement between March 12, 2012 and February 21, 2019.

Statement of reasons and documentation of workdays according to Class Member: **[Attach supporting documentation and use separate page(s) as necessary.]**

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ___________________, _____ 2019
Month Day

_____________________________________
Signature