Jennifer Keating, SBN 250857
Amy Endo, SBN 272998
Giselle Olmedo, SBN 294750
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile:  (510) 272-0174
Email: jkeating@leonardcarder.com
       aendo@leonardcarder.com
       golmedo@leonardcarder.com

Attorneys for PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON CARTER, JUAN ESTRADA, JERRY GREEN, BURL MALMGREN, BILL McDONALD, and JOEL MORALES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LAST MILE, INC. and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO.   3:16-cv-01231-WHO<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION**<br><br>Hearing Date:   May 29, 2019<br>Time:           2:00 p.m.<br>Location:       Courtroom 2, 17th Floor<br>Judge:          Hon. William H. Orrick |

Plaintiffs Ronnel Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales ("Plaintiffs"), and Defendant XPO Last Mile, Inc. ("Defendant" or "XPO LM") by and through their respective counsel, appeared in front of this Court on May 29, 2019, on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification. Plaintiffs submitted the Settlement Agreement and Release of Claims (the "Settlement Agreement"). Having considered the briefs, Settlement Agreement, the oral argument submitted by counsel, and the relevant statutory and case law, the Court GRANTS Plaintiffs' Motion, ORDERS Class Notice, and FINDS as follows:

## I.   INTRODUCTION

Plaintiffs seek preliminary approval of a $16,500,000.00 non-reversionary collective and class action settlement on behalf of approximately 847 current and former delivery drivers ("Contract Carriers" or "Class Members") that provided delivery services for XPO LM pursuant to a Delivery Service Agreement ("DSA") from March 12, 2012 through February 21, 2019, to resolve federal and state wage and hour claims. The proposed settlement is fair, reasonable and adequate and the standards for certification of the proposed class in the context of a settlement are satisfied.

## II.   BACKGROUND

### A. Litigation History

On March 11, 2016, Plaintiffs filed this action in the United States District Court – Northern District of California, asserting various claims under the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). On June 9, 2016, Plaintiffs filed their First Amended Complaint adding claims for penalties under the California Private Attorneys General Act ("PAGA"). Dkt. No. 33.

In October 2016, the Court granted Plaintiffs' motion for conditional certification of a collective action under the FLSA, facilitating notice to individuals who had entered into a DSA and personally worked as delivery drivers for XPO LM in California. Dkt. No. 61. Notice of

1  conditional certification was issued and approximately 115 individuals opted into the collective
2  action. Dkt. No. 139.
3      This Action was related to two others (Dkt. No. 83), and the parties involved in all three
4  cases stipulated to, and the Court issued, an Order Defining the Respective Classes in the three
5  related cases. Dkt. Nos. 83 and 101. Thereafter, the Parties in this Action engaged in extensive
6  written and documentary discovery, including the exchange of hundreds of thousands of
7  documents, and the taking of more than twenty depositions. In addition, Plaintiffs' counsel
8  interviewed approximately 80 individuals who opted into the collective action.
9      The parties reached a settlement at the conclusion of two days of mediation before a
10 nationally recognized class action wage and hour mediator, following receipt of a mediator's
11 proposal. Prior to the mediation, XPO LM provided Plaintiffs with a large volume of damages data
12 regarding the work performed by the putative Class Members to allow an expert retained by
13 Plaintiffs to estimate, *inter alia*, the hours worked and expenses incurred by putative Class
14 Members, for the purpose of building a damages model. On November 19, 2018, the parties
15 advised the Court that they had reached a settlement and were finalizing the Settlement Agreement.
16 Dkt. No. 174. On April 22, 2019, Plaintiffs filed the instant motion for preliminary approval of a
17 class action settlement and conditional class certification.
18 **B. Settlement Agreement**
19     Under the Settlement Agreement, XPO LM has agreed to pay a gross Settlement Fund of
20 $16,500,000, which includes: (1) individual pro rata settlement awards to Class Members who do
21 not exclude themselves from the case; (2) a $24,000 PAGA allocation, $18,000 of which will go to
22 LWDA and $6,000 of which will be included in the Net Settlement Fund for distribution to the
23 class; (3) Plaintiffs' counsel's fees and expenses in an amount up to 25% of the gross Settlement
24 Fund, or $4,125,000 (Plaintiffs' counsel have indicated that they do not intend to seek the full 30%
25 fee award permitted under the Settlement Agreement); (4) class representative service awards for
26 Plaintiffs in an aggregate amount up to $102,500 (Plaintiffs' counsel have indicated that they do
27 not intend to seek the full amount of the service awards permitted under the Settlement
28 Agreement); and (5) settlement administration costs not to exceed $50,000. This leaves a Net

2
[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION                Case No. 3:16-cv-01231-WHO

1  Settlement Fund of approximately $12,054,500.

2  The Net Settlement Fund will be allocated to individual class members based on the
3  number of days the class member is identified in XPO LM's records as having provided delivery
4  services for XPO LM in California pursuant to his or her DSA between March 12, 2012, and
5  February 21, 2019.  $150,000 will be allocated for pro rata distribution among those Settlement
6  Class Members who opted into the FLSA collective action, and the remainder of the Net
7  Settlement Fund, approximately $11,904,500, will be distributed among all Settlement Class
8  Members who do not opt out, on a pro rata basis, based on days of work during the Class Period.

9  The settlement will result in a payment of approximately $70 for each day worked by a
10 Settlement Class Member, with an additional $2.50 per workday to those who opted into the FLSA
11 collective action.  Estimated payments to the Settlement Class Members range from $70 to over
12 $138,700 and average $14,222.82.  The additional payments to the collective action opt-ins range
13 from $2.50 to over $4,600, and average $1,530.61.

14 The proposed Settlement Class definition is as follows:

15 All persons who (a) entered into a Delivery Service Agreement either in his or her
16 individual capacity or through a business entity with XPO LM or 3PD, and (b) according to XPO LM's records was a driver who performed delivery services
17 pursuant to that Delivery Service Agreement, and (c) performed a portion of those delivery services within the state of California, at any time during the Class Period
18 [March 12, 2012 through February 21, 2019].

19 Upon preliminary approval, the Settlement Administrator, Settlement Services, Inc.
20 ("SSI"), is to send a Notice Packet to the class.  The Notice Packet shall include an adjustment
21 form.  Because this is not a claims-made settlement, Class Members are not required to make a
22 submission to participate in the settlement.  In addition, the Settlement Administrator will establish
23 a website and a toll-free telephone number for Class Member inquiries.

24

25 **III.   DISCUSSION**

26   **A. Conditional Certification of the Settlement Class Under Rule 23**

27 In order to review the sufficiency of the settlement, the Court must first determine that the
28 proposed class satisfies the criteria set out in Federal Rules of Civil Procedure Rule 23(a),

1  specifically that: (1) the class is so numerous that joinder would be impracticable; (2) there are
2  questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the
3  claims of the proposed class; and (4) the named plaintiffs and their counsel will adequately and
4  fairly represented the interests of the class.  *See* Manual for Complex Litigation § 21.632 (4th ed.
5  2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  Having reviewed the
6  evidence and argument submitted, the Court finds that each of these criteria are satisfied here.

7  The Court also finds that the Settlement Class satisfies the requirements of Rule 23 (b)(3),
8  because common questions "predominate over any questions affecting only individual members,"
9  and class resolution is "superior to other available methods for the fair and efficient adjudication of
10  the controversy."  First, the Settlement Class satisfies the predominance requirement, which
11  examines whether the proposed class is "sufficiently cohesive to warrant adjudication by
12  representation."  *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect
13  of the case and they can be resolved for all members of the class in a single adjudication, there is
14  clear justification for handling the dispute on a representative rather than on an individual basis."
15  *Id*.  Here, common issues predominate because Plaintiffs' claims turn on a common liability issue
16  suited to class-wide adjudication.

17  Second, Rule 23 (b)(3) is satisfied because resolution of the issues in this case on a class-
18  wide basis is "superior to other available methods for the fair and efficient adjudication of the
19  controversy."  *Id*. at 1023.  The alternative to a single class action -- numerous individual actions --
20  would be inefficient and unfair.  *See*, e.g., *Custom Led, LLC v. eBay, Inc*., No. 12-CV-00350-JST,
21  2013 WL 4552789, at *5 (N.D. Cal. Aug. 27, 2013) (superiority established because a "class action
22  would achieve the resolution of the putative class members' claims at a lower cost and would
23  reduce the likelihood of inconsistent determinations"); *Hanlon*, 150 F.3d at 1023 ("many claims
24  [that] could not be successfully asserted individually. . . would not only unnecessarily burden the
25  judiciary, but would prove uneconomic for potential plaintiffs.").

26  **B. The Standard for Preliminary Approval**

27  The Court determines whether the proposed class action settlement warrants preliminary
28  approval by determining the fairness, reasonableness and adequacy of the settlement terms,

reserving closer scrutiny for the final approval hearing. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). Courts should grant preliminary approval of a settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Courts should also apply their discretion in light of the judicial policy favoring settlement of complex class action litigation. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

Adequate discovery and the use of an experienced mediator tend to support the conclusion that settlement negotiations were informed and non-collusive. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Settlement Agreement was the result of thorough negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. The parties engaged in extensive written and documentary discovery, and took more than twenty depositions, and Plaintiffs' counsel interviewed approximately 80 Collective Action Opt-Ins and retained an expert to review and analyze a large volume of damages data. The settlement was only reached following the issuance of a mediator's proposal at the conclusion of two days of mediation. Here, the relevant factors weigh in favor of preliminary approval.

**C. Whether the Settlement Falls Within the Range of Possible Approval**

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer," taking into account the risks of continuing litigation. *See In re Tableware Antitrust Litig.,* 484 F.Supp.2d at 1080. Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk,

1 the Parties each gave up something they might have won had they proceeded with litigation."
2 *Officers for Justice*, 688 F.2d at 624 (internal quotations and citation omitted).  Here, the
3 Settlement is fair, adequate, and well within the range of possible approval.

4       As explained above, the Settlement Agreement provides for a recovery for the class of
5 $16,500,000, less attorneys' fees and expenses, Plaintiffs' service awards, the PAGA payment to
6 the LWDA, and settlement administration costs.  This represents a substantial recovery for the
7 class, in light of the risk, expense, complexity, and likely duration of further litigation.  The class
8 members can expect to receive approximately $70 per workday, which represents approximately
9 20% of Plaintiffs' counsel's best estimate of the maximum verdict value of the Class' potential
10 recovery of all wages, expenses, interest and penalties, assuming all factual and legal disputes
11 would be resolved in Plaintiffs' favor and they would obtain the full value of their claimed
12 damages.  In light of Plaintiffs' estimate and the potential that a damages award could be
13 significantly less, the settlement amount is substantial and fair.

14       Plaintiffs identify a number of risks they may face in further litigation.  Defendant disputes
15 that it had an employment relationship with the putative class members, and there is a risk that
16 Plaintiffs' claims could fail entirely.

17       Defendant opposed Plaintiffs' motion to conditionally certify the collective action, arguing
18 that the class lacked commonality for many reasons, including: (1) how the work is performed
19 varied by market; (2) the applicability of the dispatch and delivery rules were not uniform; (3) the
20 DSA's varied; (4) the amounts paid to putative Class Members varied, and some negotiated over
21 their pay; (5) some putative Class Members were able to refuse deliveries without consequence;
22 and (6) some putative Class Members provided delivery services to multiple companies while
23 others worked exclusively for XPO LM.  Defendant would oppose class certification based on
24 these and other grounds, and Plaintiffs would have a higher burden to overcome these arguments.
25 Although Defendant has not moved to compel arbitration, and Plaintiffs' take the position that
26 Defendant has waived arbitration, the DSAs contain arbitration provisions, and there is a risk that
27 some if not all putative Class Members could be forced into individual arbitration.
28

1       If the case is permitted to proceed in court on a class-wide basis, Defendant contends that Plaintiffs are not covered by state and federal overtime provisions pursuant to the Motor Carrier Act ("MCA") exemption, and that some or all of the statute and wage order provisions upon which Plaintiffs' claims are based are preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. §§14501, *et seq.* There are also a number of issues that could impact Plaintiffs' ability to establish damages on a class-wide basis, presenting a risk that any damages award obtained for the putative Class Members would only be a fraction of the potential exposure calculated by counsel.

Plaintiffs' counsel are competent and experienced, and conducted extensive investigation and discovery. Plaintiffs' counsel recommends the proposed settlement as fair, adequate and reasonable to the class members and in their best interests.

Accordingly, the Court finds that the proposed settlement is within the range of reasonableness.

## IV.   ADMISSIONS, NON-APPROVAL, AND TIMING

Neither this Order nor the Settlement Agreement, nor any of their terms or provisions, nor any of the negotiations or proceedings connected with them, shall be construed as an admission or concession by Defendant of the truth of any of the allegations in this litigation, or of any liability, fault or wrongdoing of any kind.

In the event the proposed settlement as provided in the Settlement Agreement is not approved by the Court, or for any reason the parties fail to obtain a final approval order as contemplated in the Settlement Agreement, or the Settlement Agreement is terminated or voided pursuant to its terms, the Settlement Agreement shall become null and void and of no further force or effect, and shall not be used or referred to for any purpose whatsoever, and this Order shall be treated as vacated nunc pro tunc. In such event, the Settlement Agreement and all negotiations and proceedings relating to it shall be withdrawn without prejudice as to the rights of any and all parties thereto.

The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the class.

## V. CONCLUSION

Good cause appearing therefor, **IT IS HEREBY ORDERED** that:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Settlement Class is certified, and the Settlement Agreement is preliminarily approved.

2. Plaintiffs Ron Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales are approved as the Class Representatives.

3. Jennifer Keating, Leonard Carder LLP is appointed as Class Counsel.

4. SSI is appointed as Settlement Administrator.

5. Notice of the proposed settlement, and the rights of Class Members, including the right to opt out of the settlement, shall be given by mailing of the Notice and the Adjustment Form appended to the Settlement Agreement by first class mail, postage prepaid, to all Class Members and by e-mailing the Notice to all Class Members for whom the parties have e-mail addresses.  Defendant shall provide the Settlement Administrator with the information necessary to conduct the mailing as set forth in the Settlement Agreement.

6. A hearing shall be held before this Court on _____ at _____ to consider whether the settlement should be given final approval by the Court:

    a. Written objections by Class Members to the proposed settlement will be considered if delivered on or before the deadline provided by the Settlement Agreement;

    b. At the Final Approval Hearing, Class Members may be heard orally in support of or in opposition to the settlement;

    c. Class Counsel and counsel for Defendant should be prepared at the hearing to respond to objections filed by Class Members, and to provide other information as appropriate, bearing on whether or not the settlement should be approved; and

    d. At the Final Approval Hearing, the Court shall consider any motions or applications for attorneys' fees, costs and litigation expenses, and incentive payments to the Class Representatives, consistent with the Settlement Agreement, and any such motions shall be filed with the Court no more than 30 days before the deadline for filing objections.

7. In the event that the Effective Date occurs, all Settlement Class Members will be deemed to have forever released and discharged the released claims.  In the event that the Effective Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

8. Pending further order of the Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are stayed.

9. The Court expressly reserves the right to adjourn or continue the Final Approval Hearing without further notice to the Class.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

IT IS SO ORDERED, this ____ day of _____, 2019.

                                                  Honorable William H. Orrick
United States District Judge