UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON CARTER, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>XPO LOGISTICS, INC,<br><br>   Defendant. | Case No. 16-cv-01231-WHO<br><br>**ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT** |

Plaintiffs Ronnel Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales ("Plaintiffs"), and Defendant XPO Last Mile, Inc. ("Defendant" or "XPO LM") by and through their respective counsel, appeared in front of this Court on June 26, 2019, on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification. Plaintiffs submitted the Settlement Agreement and Release of Claims (the "Settlement Agreement"). Having considered the briefs, Settlement Agreement, the oral argument submitted by counsel, and the relevant statutory and case law, the Court GRANTS Plaintiffs' Motion, ORDERS Class Notice, and FINDS as follows:

## I. INTRODUCTION

Plaintiffs seek preliminary approval of a $16,500,000.00 non-reversionary collective and class action settlement on behalf of approximately 847 current and former delivery drivers ("Contract Carriers" or "Class Members") that provided delivery services for XPO LM pursuant to a Delivery Service Agreement ("DSA") from March 12, 2012 through February 21, 2019, to resolve federal and state wage and hour claims. The proposed settlement is fair, reasonable and adequate and the standards for certification of the proposed class in the context of a settlement are satisfied.

## II. BACKGROUND

### A. Litigation History

On March 11, 2016, Plaintiffs filed this action in the United States District Court – Northern District of California, asserting various claims under the California Labor Code and the

federal Fair Labor Standards Act ("FLSA").  On June 9, 2016, Plaintiffs filed their First Amended Complaint adding claims for penalties under the California Private Attorneys General Act ("PAGA").  Dkt. No. 33.

In October 2016, the Court granted Plaintiffs' motion for conditional certification of a collective action under the FLSA, facilitating notice to individuals who had entered into a DSA and personally worked as delivery drivers for XPO LM in California.  Dkt. No. 61.  Notice of conditional certification was issued and approximately 115 individuals opted into the collective action. Dkt. No. 139.

This Action was related to two others (Dkt. No. 83), and the parties involved in all three cases stipulated to, and the Court issued, an Order Defining the Respective Classes in the three related cases.  Dkt. Nos. 83 and 101.  Thereafter, the Parties in this Action engaged in extensive written and documentary discovery, including the exchange of hundreds of thousands of documents, and the taking of more than twenty depositions.  In addition, Plaintiffs' counsel interviewed approximately 80 individuals who opted into the collective action.

The parties reached a settlement at the conclusion of two days of mediation before a nationally recognized class action wage and hour mediator, following receipt of a mediator's proposal.  Prior to the mediation, XPO LM provided Plaintiffs with a large volume of damages data regarding the work performed by the putative Class Members to allow an expert retained by Plaintiffs to estimate, *inter alia*, the hours worked and expenses incurred by putative Class Members, for the purpose of building a damages model.  On November 19, 2018, the parties advised the Court that they had reached a settlement and were finalizing the Settlement Agreement.  Dkt. No. 174.  On April 22, 2019, Plaintiffs filed the instant motion for preliminary approval of a class action settlement and conditional class certification.

**B. Settlement Agreement**

Under the Settlement Agreement, XPO LM has agreed to pay a gross Settlement Fund of $16,500,000, which includes: (1) individual pro rata settlement awards to Class Members who do not exclude themselves from the case; (2) a $24,000 PAGA allocation, $18,000 of which will go to LWDA and $6,000 of which will be included in the Net Settlement Fund for distribution to the

class; (3) Plaintiffs' counsel's fees and expenses in an amount up to 25% of the gross Settlement Fund, or $4,125,000 (Plaintiffs' counsel have indicated that they do not intend to seek the full 30% fee award permitted under the Settlement Agreement); (4) class representative service awards for Plaintiffs in an aggregate amount up to $102,500 (Plaintiffs' counsel have indicated that they do not intend to seek the full amount of the service awards permitted under the Settlement Agreement); and (5) settlement administration costs not to exceed $50,000. This leaves a Net Settlement Fund of approximately $12,054,500.

The Net Settlement Fund will be allocated to individual class members based on the number of days the class member is identified in XPO LM's records as having provided delivery services for XPO LM in California pursuant to his or her DSA between March 12, 2012, and February 21, 2019. $150,000 will be allocated for pro rata distribution among those Settlement Class Members who opted into the FLSA collective action, and the remainder of the Net Settlement Fund, approximately $11,904,500, will be distributed among all Settlement Class Members who do not opt out, on a pro rata basis, based on days of work during the Class Period.

The settlement will result in a payment of approximately $70 for each day worked by a Settlement Class Member, with an additional $2.50 per workday to those who opted into the FLSA collective action. Estimated payments to the Settlement Class Members range from $70 to over $138,700 and average $14,222.82. The additional payments to the collective action opt-ins range from $2.50 to over $4,600, and average $1,530.61.

The proposed Settlement Class definition is as follows:

> All persons who (a) entered into a Delivery Service Agreement either in his or her individual capacity or through a business entity with XPO LM or 3PD, and (b) according to XPO LM's records was a driver who performed delivery services pursuant to that Delivery Service Agreement, and (c) performed a portion of those delivery services within the state of California, at any time during the Class Period [March 12, 2012 through February 21, 2019].

Upon preliminary approval, the Settlement Administrator, Settlement Services, Inc. ("SSI"), is to send a Notice Packet to the class. The Notice Packet shall include an adjustment form. Because this is not a claims-made settlement, Class Members are not required to make a submission to participate in the settlement. In addition, the Settlement Administrator will

3

establish a website and a toll-free telephone number for Class Member inquiries.

**III.   DISCUSSION**

   **A. Conditional Certification of the Settlement Class Under Rule 23**

In order to review the sufficiency of the settlement, the Court must first determine that the proposed class satisfies the criteria set out in Federal Rules of Civil Procedure Rule 23(a), specifically that: (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) the named plaintiffs and their counsel will adequately and fairly represented the interests of the class. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Having reviewed the evidence and argument submitted, the Court finds that each of these criteria are satisfied here.

The Court also finds that the Settlement Class satisfies the requirements of Rule 23(b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Here, common issues predominate because Plaintiffs' claims turn on a common liability issue suited to class-wide adjudication.

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class-wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy." *Id*. at 1023.

   **B. The Standard for Preliminary Approval**

The Court determines whether the proposed class action settlement warrants preliminary approval by determining the fairness, reasonableness and adequacy of the settlement terms. , .

The Court finds the Settlement Agreement was the result of thorough negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. The parties engaged in extensive written and documentary discovery, and took more than twenty depositions, and Plaintiffs' counsel interviewed approximately 80 Collective Action Opt-Ins and retained an expert to review and analyze a large volume of damages data. The settlement was only reached following the issuance of a mediator's proposal at the conclusion of two days of

mediation. Here, the relevant factors weigh in favor of preliminary approval.

## C. Whether the Settlement Falls Within the Range of Possible Approval

As explained above, the Settlement Agreement provides for a recovery for the class of $16,500,000, less attorneys' fees and expenses, Plaintiffs' service awards, the PAGA payment to the LWDA, and settlement administration costs. This represents a substantial recovery for the class, in light of the risk, expense, complexity, and likely duration of further litigation. The class members can expect to receive approximately $70 per workday, which represents approximately 20% of Plaintiffs' counsel's best estimate of the maximum verdict value of the Class' potential recovery of all wages, expenses, interest and penalties, assuming all factual and legal disputes would be resolved in Plaintiffs' favor and they would obtain the full value of their claimed damages. In light of Plaintiffs' estimate and the potential that a damages award could be significantly less, the settlement amount is substantial and fair.

Plaintiffs identify a number of risks they may face in further litigation. Defendant disputes that it had an employment relationship with the putative class members, and there is a risk that Plaintiffs' claims could fail entirely.

Defendant opposed Plaintiffs' motion to conditionally certify the collective action, arguing that the class lacked commonality for many reasons, including: (1) how the work is performed varied by market; (2) the applicability of the dispatch and delivery rules were not uniform; (3) the DSA's varied; (4) the amounts paid to putative Class Members varied, and some negotiated over their pay; (5) some putative Class Members were able to refuse deliveries without consequence; and (6) some putative Class Members provided delivery services to multiple companies while others worked exclusively for XPO LM. Defendant would oppose class certification based on these and other grounds, and Plaintiffs would have a higher burden to overcome these arguments. Although Defendant has not moved to compel arbitration, and Plaintiffs' take the position that Defendant has waived arbitration, the DSAs contain arbitration provisions, and there is a risk that some if not all putative Class Members could be forced into individual arbitration.

If the case is permitted to proceed in court on a class-wide basis, Defendant contends that Plaintiffs are not covered by state and federal overtime provisions pursuant to the Motor Carrier

Act ("MCA") exemption, and that some or all of the statute and wage order provisions upon which Plaintiffs' claims are based are preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. §§14501, *et seq.* There are also a number of issues that could impact Plaintiffs' ability to establish damages on a class-wide basis, presenting a risk that any damages award obtained for the putative Class Members would only be a fraction of the potential exposure calculated by counsel.

Plaintiffs' counsel are competent and experienced, and conducted extensive investigation and discovery. Plaintiffs' counsel recommends the proposed settlement as fair, adequate and reasonable to the class members and in their best interests.

Accordingly, the Court finds that the proposed settlement is within the range of reasonableness.

## IV. ADMISSIONS, NON-APPROVAL, AND TIMING

Neither this Order nor the Settlement Agreement, nor any of their terms or provisions, nor any of the negotiations or proceedings connected with them, shall be construed as an admission or concession by Defendant of the truth of any of the allegations in this litigation, or of any liability, fault or wrongdoing of any kind.

In the event the proposed settlement as provided in the Settlement Agreement is not approved by the Court, or for any reason the parties fail to obtain a final approval order as contemplated in the Settlement Agreement, or the Settlement Agreement is terminated or voided pursuant to its terms, the Settlement Agreement shall become null and void and of no further force or effect, and shall not be used or referred to for any purpose whatsoever, and this Order shall be treated as vacated nunc pro tunc. In such event, the Settlement Agreement and all negotiations and proceedings relating to it shall be withdrawn without prejudice as to the rights of any and all parties thereto.

The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the class.

## V. CONCLUSION

Good cause appearing therefor, **IT IS HEREBY ORDERED** that:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Settlement Class is certified, and the Settlement Agreement is preliminarily approved.
2. Plaintiffs Ron Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald, and Joel Morales are approved as the Class Representatives.
3. Jennifer Keating, Leonard Carder LLP is appointed as Class Counsel.
4. SSI is appointed as Settlement Administrator.
5. Notice of the proposed settlement, and the rights of Class Members, including the right to opt out of the settlement, shall be given by mailing of the Notice and the Adjustment Form appended to the Settlement Agreement by first class mail, postage prepaid, to all Class Members and by e-mailing the Notice to all Class Members for whom the parties have e-mail addresses.  Defendant shall provide the Settlement Administrator with the information necessary to conduct the mailing as set forth in the Settlement Agreement.
6. A hearing shall be held before this Court on October 16, 2019at 2:00 p.m. to consider whether the settlement should be given final approval by the Court:
    a. Written objections by Class Members to the proposed settlement will be considered;
    b. At the Final Approval Hearing, Class Members may be heard orally in support of or in opposition to the settlement;
    c. Class Counsel and counsel for Defendant should be prepared at the hearing to respond to objections filed by Class Members, and to provide other information as appropriate, bearing on whether or not the settlement should be approved; and
    d. At the Final Approval Hearing, the Court shall consider any motions or applications for attorneys' fees, costs and litigation expenses, and incentive payments to the Class Representatives, consistent with the Settlement Agreement, and any such motions shall be filed with the Court at least 30 days before the deadline for filing objections.
7. In the event that the Effective Date occurs, all Settlement Class Members will be deemed to have forever released and discharged the released claims.  In the event that the Effective

Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

8. Pending further order of the Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are stayed.

9. The Court expressly reserves the right to adjourn or continue the Final Approval Hearing without further notice to the Class.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: June 27, 2019

William H. Orrick
United States District Judge