UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RON CARTER, et al.,

    Plaintiffs,

v.

XPO LOGISTICS, INC,

    Defendant.

Case No. 16-cv-01231-WHO

**ORDER GRANTING FINAL APPROVAL AND MOTION FOR ATTORNEY FEES AND COSTS**

Plaintiffs Ronnel Carter, Juan Estrada, Jerry Green, Burl Malmgren, Bill McDonald and Joel Morales brought this suit as a class and collective action alleging that XPO Last Mile, Inc. ("XPO LM") misclassified as independent contractors a class of delivery drivers who entered into Delivery Service Agreements with and personally drove for XPO LM, and as a result failed to reimburse them for work-related expenses and violated various wage and hour provisions of the California Labor Code and the overtime requirements under the federal Fair Labor Standards Act ("FLSA"). Plaintiffs subsequently amended their complaint to add a PAGA penalties claim.

This Court granted Plaintiffs' motion for conditional certification of a collective action in October 2016, and 116 individuals filed consents to join the FLSA collective action. Following discovery, the parties reached a settlement in April 2019, and the Court granted preliminary approval to the proposed Settlement Agreement and conditional certification of the Settlement Class on June 27, 2019, while directing that the time provided in the Settlement Agreement for Class Members to deposit checks be expanded to 180 days.

Currently pending before the Court is Plaintiffs' unopposed motion for final approval of the Settlement Agreement and Plaintiffs' motion for attorneys' fees and service awards. No Class Member has requested to opt out of the Settlement Class or objected to the Settlement Agreement. For the reasons discussed below, the Court:

(1) **GRANTS** final approval of the Settlement Agreement and certification of the Settlement Class; and

(2) **GRANTS** Plaintiffs' motion for attorneys' fees and service awards.

**A.    The Settlement**

The Settlement Class consists of:

> All persons who (a) entered into a Delivery Service Agreement either in his or her individual capacity or through a business entity with XPO LM or 3PD, and (b) according to XPO LM's records was a driver who performed delivery services pursuant to that Delivery Service Agreement, and (c) performed some portion of those delivery services within the state of California, (d) at any time during the Class Period [March 12, 2012 through February 21, 2019].

There are 832 individuals in the Settlement Class.

The Settlement Agreement provides for a non-reversionary $16.5 million gross settlement fund. Attorneys' fees and costs, class representative service awards, PAGA penalties to the California Labor Workforce Development Agency, and the Settlement Administrator's fees and costs will be deducted from the gross settlement fund before funds are distributed to Class Members. The remaining Net Settlement Fund of $12,204,500 will be distributed to Class Members pro rata based on the number of days worked during the settlement class period. $150,000 of the Net Settlement Fund will be set aside to be distributed pro rata by workdays to those Class Members who previously opted into the FLSA collective action, and $12,054,500 will be distributed pro rata by workdays to all Settlement Class Members. The disbursements will be made automatically to Class Members; they do not need to submit claims. Class Members can expect to receive at least $66.77 per workday, with an additional $2.18 per workday to those who opted into the FLSA collective action. The average award will be $14,775.70 and the largest award will be $142,894.66.

**B.    Notice**

On July 22, 2019, the Settlement Administrator mailed notice of the settlement to 853 individuals who were on the class list provided by XPO LM and email the notice packet to 747 individuals for whom they had email addresses. 130 of the notice packets sent by first-class mail were returned as undeliverable. The Settlement Administrator was able to locate new addresses for

1  107 of those, and re-mail the notice. The Settlement Administrator also set up a website for Class Members to read the notice, get answers to frequently asked questions, and review and download case documents. Class Counsel's motion for attorneys' fees and Plaintiffs' request for class representative service awards were posted on the website after they were filed with the Court. Finally, the Settlement Administrator set up a toll-free number for telephone support, through which it fielded calls from 115 Class Members. The deadline for Class Members to exclude themselves from the Settlement Class, and to file objections to the Settlement Agreement, was September 5, 2019. No Class Member has opted out or objected.

Class Members submitted 32 challenges to the Settlement Administrator's estimates based on Defendant's records. 13 of the challenges received were accepted in whole or in part; 2 were rejected; 2 were identified as Installers included on the Class List in error; and 15 were informed that they had failed to provide sufficient information to support a challenge.

After notice was distributed, the parties learned that the class data XPO LM shared with the Settlement Administrator inadvertently included 21 individuals, commonly referred to as Installers, who drove for XPO LM under contracts different and distinct from the Delivery Service Agreements at issue in this case and were therefore not part of the Settlement Class. The Settlement Administrator sent letters to those individuals to advise them of the error and provide them an opportunity to demonstrate that they had in fact entered into a Delivery Service Agreement. One of the Installers submitted a letter to the Court, Dkt. No. 190, objecting to their exclusion from the settlement. The Court hereby finds that the 21 Installers do not meet the Settlement Class definition and are not bound by the Settlement Agreement.

**C.     Class Certification**

The provisionally certified class satisfies each of the certification requirements that: (1) the individuals in the settlement class are so numerous that joinder would be impracticable; (2) there are numerous questions of law and fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the absent settlement class members; and (4) plaintiffs and their counsel will adequately and fairly represent the interests of the absent settlement class members. Dkt. No. 187, 4:3-11. In addition, plaintiffs have established that the Class is maintainable under Fed. R.

3

Civ. P. 23(b) (3) because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3); Dkt. No. 187, 4:12-19. Accordingly, pursuant to Plaintiffs' request, the Court finally certifies the class defined above for settlement purposes under Fed. R. Civ. Pro. 23(b)(3).

**D.      Final Approval**

Considering the: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement, I conclude that the settlement is fair, reasonable, and adequate and merits final approval. These factors weigh in favor of final approval for the following reasons. First, the benefit of a considerable non-reversionary financial recovery of $16,500,000 outweighs the risks, costs, and delays inherent in further class litigation, which are considerable.

The gross settlement amount of $16,500,000, represents approximately 20 percent of the maximum verdict in this case. The net settlement amount is at least $12,204,500. According to the Settlement Administrator, Class Members can expect to receive on average at least $14,775.70; 19 will receive at least $100,000. The amount of the settlement is fair, adequate and reasonable given the risks of continued litigation.

Second, the plan of allocation is also fair and reasonable. The Settlement provides that the settlement funds shall be allocated based on the best available records from which to estimate the number of days the Class Members worked during the covered period, which is the most precise allocation methodology possible given Defendant's records available. Class Members were also provided with the opportunity to dispute the information contained in Defendant's records.

Third, the parties engaged in extensive discovery, including voluminous production of documents and data and 22 witness depositions; Class Counsel interviewed dozens of Class Members and other witnesses; and Class Counsel engaged an expert to work up detailed damages

4

1 models. Further, Class Counsel had analyzed many of the issues concerning merits of the claims as they prepared the record and briefing for class certification and two days of mediation.

Fourth, Class Counsel are experienced counsel who, after weighing all of the risk factors endorse the proposed settlement.

Fifth, there have been no objections or opt-outs from Class Members and this lack of opposition and opt-outs supports the determination that the Settlement is fair, reasonable, and adequate.

### E. FLSA Collective Action

The resolution of the FLSA claims is a fair and reasonable resolution of a bona fide dispute. The $150,000 pro rata distribution to the FLSA opt-ins, which works out to an additional $2.18 per workday, is a fair and reasonable resolution of the FLSA overtime claims, as it compensates those employees for agreeing to a broader release than other Class Members as well as for their potential entitlement to liquidated damages that are not provided for under California law. Accordingly, the Court approves the settlement of the FLSA collective action.

In addition, pursuant to Plaintiffs' request, the Court hereby dismisses, without prejudice, the FLSA claims of Enrique Gongora, Erick Alverez Maradiaga, Marlon Arias Morales, Robert Santos, Mark Anthony Turner, Eduardo Lopez, Isidro Valle, Efren Ruiz, Nelson Palacios, Sukkchain Singh, and Nirmal Srai, all of whom opted into the FLSA collective action but did not personally work as a delivery driver for XPO LM or its predecessor 3PD pursuant to a Delivery Service Agreement.

### F. Cy Pres Appointment

The Settlement Agreement contemplates a second distribution to the Class for any amounts from uncashed checks, with any residual amount from uncashed checks or other remaining funds to be paid to the Legal Aid at Work ("LAAW") (formerly Legal Aid Society-Employment Law Center) as the *cy pres* beneficiary. LAAW's work on-behalf of low-wage workers, particularly in the area of wage and hour, has a close nexus to the rights that Plaintiffs sought to vindicate in this action. Pursuant to Plaintiffs' request, the Court confirms this *cy pres* appointment.

## G. Attorney Fees and Costs

Class Counsel request an award of $4,125,000 for attorney fees and litigation expenses incurred in this case. The fee request, if granted, would represent 25 percent of the total settlement of $16,500,000, which is the "benchmark" percentage in the Ninth Circuit and routinely awarded by courts in the Northern District of California. The requested fee amount would result in a lodestar enhancement of approximately 1.5. The requested attorney fees are appropriate given the result secured by counsel, the risks faced in the litigation, and the lodestar representing a 1.5 multiplier, and that request is GRANTED.

## E. Class Representative Service Awards

Plaintiffs seek class representative service awards of $20,000 for five of the named plaintiffs (Ronnel Carter, Burl Malmgren, Bill McDonald, Joel Morales, and Jerry Green). That amount is high, but appropriate in this case as the demands on the named plaintiffs and the time commitments required were atypical and particularly significant. These named plaintiffs spent between 602 and 721 hours assisting in the preparation, prosecution and settlement of this case, including taking multiple days off or work to prepare for and have their depositions taken and attending the medication in person. In addition, the discovery sought from and provided by the named plaintiffs, as well as their assistance to counsel in interpreting the class member discovery and data, was uniquely significant given the claims asserted and the lack of data available from defendants. Plaintiffs also seek a class representative service award of $2,500 for a named plaintiff (Juan Estrade) who passed away during the early portion of the litigation but spent between approximately 33 and 38 hours assisting counsel, including travel for in person meetings with counsel, and providing discovery. Given the unique and significant time commitments these named plaintiffs made to this litigation the requested enhancements are justified.

In addition, the total requested service award ($102,500) is approximately 0.6% of the total settlement of $16,500,000 and $20,000 is only about 1.3 times the average payout to the absent class members and 14% of the maximum expected recovery. Measured against the total settlement and average pay out to absent class members, the awards sought here are within the range of reasonableness.

## CONCLUSION

For the forgoing reasons, Plaintiffs' motion for final approval of the Settlement Agreement and class certification is **GRANTED**, and distribution shall be made in accordance with the terms of the Settlement Agreement. Plaintiffs' motion for attorneys' fees and costs and class representative service awards is **GRANTED** in the amount of $4,125,000 to Class Counsel for attorneys' fees and costs; $20,000 each to Ronnel Carter, Burl Malmgren, Bill McDonald, Joel Morales and the Estate of Jerry Green and $2,500 to the Estate of Juan Estrada for class representative service awards. Counsel are reminded to submit a Post-Distribution Accounting, pursuant to this Court's Procedural Guidance for Class Action Settlements, within 21 days after the distribution of the settlement funds and payment of attorney fees.

**IT IS SO ORDERED.**

Dated: October 18, 2019

William H. Orrick
United States District Judge